**Margaret MILLER, Plaintiff,**

v.

**BANK OF AMERICA, a corporation, Defendant.**

**No. C–75–2680SW.**

United States District Court, N. D. California.

Aug. 19, 1976.

---

Stuart A. Wein, San Francisco, Cal., for plaintiff.

Theodore Sachsman, Robert A. Padway, William J. A. Weir, San Francisco, Cal., for defendant.

## OPINION

SPENCER WILLIAMS, District Judge.

This matter is before the Court on defendant's motion for summary judgment, duly noticed, argued and submitted.

Plaintiff, a black woman, was an NCR operator for defendant Bank. She claims that her operations supervisor, a white male, promised her a better job if she would be sexually "cooperative", and caused her dismissal when she refused.

Plaintiff failed to avail herself of the services of Bank's Employer Relations Department that was established to investigate employee complaints, including complaints of sexual impropriety and sexual advances. Instead, she filed a written charge with the EEOC and, upon receiving her right-to-sue letter, filed the instant action.

Jurisdiction is invoked pursuant to 42 U.S.C.A. § 1981 and 42 U.S.C.A. § 2000e *et seq.* Plaintiff seeks injunctive relief, reinstatement, back pay and attorney's fees for alleged sex discrimination in violation of Title VII of the Civil Rights Act of 1964.

It is undisputed that Bank has a policy of discouraging sexual advances of the sort here alleged and of affirmatively disciplining employees found guilty of such conduct.

Section 2000e–2(a) provides that "it shall be an unlawful employment practice for an employer (1) to . . . discharge . . any individual . . . because of such individual's . . . sex . . . ."

The issue before the Court is whether Title VII was intended to hold an employer liable for what is essentially the isolated and unauthorized sex misconduct [1] of one employee to another.

Little can be gleaned from the legislative history of the specific prohibition against

1. This is not a race discrimination case. While the complaint is couched in terms of both race and sex discrimination, plaintiff's counsel, during argument before the Court, conceded that the case should stand or fall on the issue of sex discrimination.

sex discrimination. It was never the subject of Legislative Committee hearings but was added to the 1964 Civil Rights Act by amendment offered during debate in the House. And the debate on the amendment (see, 110 Cong. Rec. 2577–2584) was devoted primarily to its possible adverse impact on the balance of Title VII. The Congressional Record fails to reveal any specific discussions as to the amendment's intended scope or impact. In addition, the great bulk of reported cases, unlike the instant case, concern established company policies that have been found either to violate, or not to violate, the prohibition against sex discrimination.

The parties have been able to present, and the Court has been able to find, but two reported cases which address the question of employer liability for unauthorized isolated sex-related acts by one employee against another.

In *Corne v. Bausch & Lomb, Inc.,* 390 F.Supp. 161 (D.Ariz.1975), the court found that unwelcome verbal and physical sex advances by a male supervisor to two female employees, which compelled them to terminate their employment, created no rights to relief under Title VII. In granting defendant's motion to dismiss, the court stated:

"Nothing in the complaint alleges nor can it be construed that the conduct complained of was company directed policy which deprived women of employment opportunities. A reasonably intelligent reading of the statute demonstrates it can only mean that an unlawful employment practice must be discrimination on the part of the employer, Bausch and Lomb. Further, there is nothing in the Act which could reasonably be construed to have it apply to 'verbal and physical sexual advances' by another employee, even though he be in a supervisory capacity where such complained of acts or conduct had no relationship to the nature of the employment." 390 F.Supp. at 163.

In *Williams v. Saxbe,* 413 F.Supp. 654 (D.D.C.1976), the court, in denying defendant's motion to dismiss, held that retaliatory actions, taken because a female employee declined her supervisor's sexual advances, constitute sex discrimination within Title VII. However, in so ruling, the court stated:

" . . . whether this case presents a policy or practice of imposing a condition of sexual submission on the female employees . . . or whether this was a non-employment related personal encounter requires a factual determination. It is sufficient for purposes of the motion to dismiss that the plaintiff has alleged it was the former in this case."

█ And in footnote 8, following the above quote, the court noted:

"Paragraph 21 of the Complaint alleges that the supervisor's conduct was a policy or practice imposed on the plaintiff and other women similarly situated. This is an essential allegation for presenting a cause of action. *Plaintiff's theory has never been that this was merely an isolated personal incident.*" (Emphasis added.)

In the instant case, the two affidavits of L. G. Zugnoni, Bank Vice-President, categorically allege that it is the policy of the Bank to prevent and prohibit moral misconduct, including sexual advances, and to suspend and/or dismiss and/or reprimand in some other manner employees who have made sexual advances to their co-employees, subordinate employees or superior employees.

No affidavits filed by plaintiff controvert these factual allegations. In her affidavit, plaintiff alleges that:

"Mr. Taufer (her supervisor) fired me because I . . . rejected his sexual advances", and that

"I believe that Defendant Bank has and had a policy or practice of permitting males in a supervisory position, specifically Mr. Taufer, to put . . . female employees in subsidiary roles demeaning to their dignity, and a role which . . . female employees had to play in order to remain employed with defendant. . . ."

Furthermore, plaintiff cannot validly claim Bank's tacit approval of Taufer's conduct since, as noted above, she failed to

bring the matter to Bank's attention by filing a complaint with Bank's Employer Relations Department and allowing it to conduct an appropriate investigation.

Obviously, as in *Williams v. Saxbe, supra,* there may be situations in which a sex discrimination action can be maintained for an employer's active, or tacit approval, of a personnel policy requiring sex favors as a condition of employment. But as stated in *Corne,* 390 F.Supp. at page 163,

> "It would be ludicrous to hold that the sort of activity involved here was contemplated by the Act . . . . [A]n outgrowth of [such a holding] would be a potential federal lawsuit every time any employer made amorous or sexually oriented advances toward another." [2]

In addition, it would not be difficult to foresee a federal challenge based on alleged sex motivated considerations of the complainant's superior in every case of a lost promotion, transfer, demotion or dismissal. And who is to say what degree of sexual cooperation would found a Title VII claim?

It is conceivable, under plaintiff's theory, that flirtations of the smallest order would give rise to liability. The attraction of males to females and females to males is a natural sex phenomenon and it is probable that this attraction plays at least a subtle part in most personnel decisions. Such being the case, it would seem wise for the Courts to refrain from delving into these matters short of specific factual allegations describing an employer policy which in its application imposes or permits a consistent, as distinguished from isolated, sex-based discrimination on a definable employee group.

Since plaintiff has failed to demonstrate that there remain any genuine issues of material fact herein defendant's motion for summary judgment is granted.[3]

---

**2.** Whether or not an employer can be held liable under Title VII for isolated acts of sexually discriminatory misconduct on the part of its lower echelon employees has not been clearly established. But see, *Ostapowicz v. Johnson Bronze Co.,* 369 F.Supp. 522, 537 (W.D.Pa. 1973); *Tidwell v. American Oil Co.,* 332 F.Supp. 424, 436 (D.Utah 1971). It seems to be an issue soluble only by reference to the facts of the particular case at hand. Where, as here, however, there exists a company-wide policy expressly condemning the alleged misconduct and there exist responsive internal mechanisms established to process employee complaints of the instant sort, a failure on the part of the employee allegedly aggrieved by the condemned practice to avail him- or herself of these internal avenues of redress renders tenuous a finding of employer culpability. The Court is not to be understood as holding that exhaustion of company remedies is a prerequisite to suit under Title VII. Rather, failure of exhaustion goes more to whether the employer is liable at all. *United States v. United States Steel Corp.,* 371 F.Supp. 1045, 1054 (N.D.Ala. 1973), mod. on other grounds, 520 F.2d 1043 (5th Cir. 1975).

**3.** Having passed muster under the requirements of Title VII, the employment practices here challenged cannot violate 42 U.S.C. § 1981. *Waters v. Wisconsin Steel Works,* 502 F.2d 1309, 1320 n. 4 (7th Cir. 1974).