**Adrienne E. TOMKINS, Plaintiff,**

v.

**PUBLIC SERVICE ELECTRIC & GAS CO., and Herbert D. Reppin, Defendants.**

**Civ. A. No. 75–1673.**

United States District Court, D. New Jersey.

Nov. 22, 1976.

Nadine Taub, Newark, N.J., for plaintiff.

William S. Smith by William E. Frese, Newark, N.J., for defendant Public Service Electric & Gas Co.

Lum, Biunno & Tompkins by William Wertheimer, Newark, N.J., for defendant Reppin.

William Ng, E.E.O.C., Washington, D.C., amicus curiae.

## OPINION

STERN, District Judge.

Plaintiff Adrienne Tomkins was formerly employed by defendant Public Service Electric and Gas Company (hereinafter PSE&G). She was fired by PSE&G under circumstances which are presently in dispute. After her termination plaintiff filed this lawsuit, seeking compensatory and punitive damages and equitable relief. The gravamen of plaintiff's complaint is that she was subjected to sexual harassment by her male supervisor. She further alleges that the company retaliated against her when she protested the supervisor's actions. Plaintiff seeks to proceed under the authority of Title VII of the Civil Rights Act of 1964, Title 42 United States Code, §§ 2000e *et seq.*

Plaintiff initially sought relief from the Equal Employment Opportunity Commission, where she lodged a complaint against PSE&G and her supervisor. The EEOC investigated her claims, found no probable cause to proceed further and issued a right to sue letter. Plaintiff then instituted this lawsuit *pro se.* After reviewing the complaint this Court granted her application for the appointment of counsel. The Women's Rights Litigation Clinic of the Rutgers School of Law was designated to serve as her attorney. Plaintiff then filed an amended complaint naming PSE&G, the supervisor and certain other PSE&G employees as defendants.

The defendant company and the supervisor now move to dismiss plaintiff's complaint on various grounds, including failure to state a claim upon which relief may be granted. The allegations of the complaint must be taken as true for purposes of ruling on the motions to dismiss. *Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). These allegations may be briefly summarized.

Plaintiff was hired as an office worker at the company's Newark offices in 1971. Her progress through the lower grades of office employment was normal until she was assigned to the defendant supervisor. Plaintiff at this time was approaching eligibility for a promotion to a secretarial position. The complaint alleges that the supervisor requested that plaintiff take lunch with him outside the office premises, purportedly to discuss her prospects with the firm. Plaintiff contends that the supervisor used the opportunity to make sexual advances to her. She charges that she was detained by the supervisor against her will through economic threats and physical force.

Plaintiff alleges that she complained to the company about the lunchtime incident. She sought a transfer and accepted a less desirable position in the company. She contends that her complaints about the conduct of the supervisor resulted in retaliation against her in the form of disciplinary layoffs and threats of demotion and salary cuts. Some 15 months after the incident which provoked her complaints, plaintiff was fired by PSE&G. In sum, plaintiff claims that her superior's sexual advances coupled with his threats of reprisals, and the company's subsequent retaliation and ultimate termination of her services because of her complaints, constitute violations of Title VII.

The operative provision of Title VII is Title 42 United States Code, § 2000e–2(a). That section provides, in pertinent part:

It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . .

Each defendant contends that the allegations of the complaint state no cause of action under this provision, and that the complaint must therefore be dismissed.

Title VII has presented the federal courts with numerous difficult issues of construction and application. This lawsuit raises two issues: whether sexual harassment of a female employee by a male supervisor constitutes sex discrimination within the meaning of Title VII; and whether the conduct of an employer after a complaint of such harassment can amount to sex discrimination within the meaning of Title VII.

■ In company with three of the four district courts that have considered the issue, this Court holds that *sexual* harassment and *sexually* motivated assault do not constitute sex discrimination under Title VII. *Corne v. Bausch & Lomb, Inc.,* 390 F.Supp. 161 (D.Ariz.1975) appeal pending; *Miller v. Bank of America,* 418 F.Supp. 233 (N.D.Cal.1976); *Barnes v. Train,* Civil Action No. 1828–73 (D.D.C.1974). *Contra: Williams v. Saxbe,* 413 F.Supp. 654 (D.D.C. 1976) appeal pending.

■ Title VII was enacted in order to remove those artificial barriers to full employment which are based upon unjust and long-encrusted prejudice. Its aim is to make careers open to talents irrespective of race or sex. It is not intended to provide a federal tort remedy for what amounts to physical attack motivated by sexual desire on the part of a supervisor and which happened to occur in a corporate corridor rather than a back alley. In this instance the supervisor was male and the employee was female. But no immutable principle of psychology compels this alignment of parties. The gender lines might as easily have been reversed, or even not crossed at all. While sexual desire animated the parties, or at least one of them, the gender of each is incidental to the claim of abuse. Similarly, the pleadings in this case aver that the supervisor's advances were spurned. Had they been accepted, however, and plaintiff thereby preferred, could co-workers be heard to complain in federal court as well? It is clear that such a claim is simply without the scope of the Act. The abuse of authority by supervisors of either sex for personal purposes is an unhappy and recurrent feature of our social experience.* Such conduct is frequently illegal under the penal statutes of the relevant jurisdiction. Such conduct might well give rise to a civil action in tort. It is not, however, sex discrimination within the meaning of Title VII even when the purpose is sexual. EEOC urges that a contrary decision would not

---

* In *Corne v. Bausch & Lomb, Inc.,* 390 F.Supp. 161 (D.Ariz.1975), the court, distinguishing a number of cases in which employment practices were found to discriminate against women, stated:

In all of the above-mentioned cases the discriminatory conduct complained of, arose out of company policies. There was apparently some advantage to, or gain by, the employer from such discriminatory practices. Always such discriminatory practices were employer designed and oriented. In the present case, Mr. Price's conduct appears to be nothing more than a personal proclivity, peculiarity or mannerism. By his alleged sexual advances, Mr. Price was satisfying a personal urge. Certainly no employer policy is here involved; rather than the company being

benefited in any way by the conduct of Price, it is obvious it can only be damaged by the very nature of the acts complained of.

*Id.,* at 163. Insofar as the quoted language suggests that acts done for the private benefit of an individual supervisor cannot be imputed to the employer for the purpose of finding a violation of Title VII, this Court respectfully disagrees. If a supervisor is acting within the purview of his authority, the doctrine of *respondeat superior* may be employed whether he is driving a company car or victimizing a female. See Title 42 United States Code, § 2000e(b) which expressly includes any agent of an employer within the meaning of "employer". But if the underlying wrong does not constitute sex discrimination, sex discrimination cannot be imputed to the employer.

open the floodgates to litigation. The Commission argues that only sexual advances from a superior to a subordinate under the cloak of the superior's authority would be actionable under Title VII, and then only if such a practice contributed to an employment-related decision. But plaintiff's theory rests on the proposition, with which this Court concurs, that the power inherent in a position of authority is necessarily coercive. And, as the representative of the EEOC candidly conceded in oral argument, every sexual advance made by a supervisor would be made under the apparent cloak of that authority. Any subordinate knows that the boss is the boss whether a file folder or a dinner is at issue. Finally, the Court recalls Judge Williams' observation in *Miller, supra*: "The attraction of males to females and females to males is a natural sex phenomenon and it is probable that this attraction plays at least a subtle part in most personnel decisions." This natural sexual attraction can be subtle. If the plaintiff's view were to prevail, no superior could, prudently, attempt to open a social dialogue with any subordinate of either sex. An invitation to dinner could become an invitation to a federal lawsuit if a once harmonious relationship turned sour at some later time. And if an inebriated approach by a supervisor to a subordinate at the office Christmas party could form the basis of a federal lawsuit for sex discrimination if a promotion or a raise is later denied to the subordinate, we would need 4,000 federal trial judges instead of some 400.

The second issue tendered by plaintiff's complaint concerns the conduct of the employing company subsequent to her complaint about the supervisor. When a female employee registers a complaint of sexual abuse and the company chooses to fire her rather than investigate, the corporate response may constitute discrimination based on sex. In brief, it may reflect a conscious choice to favor the male employee over the female complainant on the ground that a male's services are more valuable than a female's. Such a preferential practice may violate the act even though the grievance procedures do not by their terms

implicate characteristics peculiar to either gender. See, *e. g., Sprogis v. United States,* 444 F.2d 1194 (7th Cir. 1971); *Phillips v. Martin Marietta Corp.,* 411 F.2d 1 (5th Cir. 1969); *vacated on other grounds,* 400 U.S. 542, 90 S.Ct. 496, 27 L.Ed.2d 613 (1971). It matters not whether the basis for the discriminatory treatment is a previous sexual assault or a matter related to salary or promotion. When a female employee registers a complaint and the grievance is not only not adequately processed, but the complainant is persecuted for having the temerity to advance it at all, the Act is violated to the extent that such a corporate posture is sex-based. If a company decides that, whatever the merits of the underlying controversy, the female will be terminated because she is female, that is sex discrimination. Plaintiff must be permitted her day in Court on this issue. Accordingly, PSE&G's motion to dismiss must be denied.

The defendant supervisor's motion to dismiss stands on a different footing. Plaintiff herself concedes that there is no remaining independent federal claim against him. Pendent jurisdiction over him may therefore not be exercised. See *Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (U.S. June 24, 1976).