Maxine MUNFORD, Plaintiff,

v.

JAMES T. BARNES & CO., Glenn D. Harris and Robert Zulcosky, Defendants.

Civ. No. 6–72240.

United States District Court, E. D. Michigan, S. D.

Sept. 9, 1977.

**460**

Thomas H. Oehmke, Detroit, Mich., for plaintiff.

Thomas M. Jinks, Troy, Mich., for defendants.

## MEMORANDUM OPINION

RALPH M. FREEMAN, District Judge.

This matter is before the Court on the motion of defendants James T. Barnes Company, Glenn D. Harris and Robert C. Zulcosky for summary judgment. For purposes of this motion, defendants stipulate to the following facts:

Plaintiff Maxine Munford, a black female, was hired by defendant Glenn D. Harris, who is white, as assistant collections manager for defendant James T. Barnes Co. on January 28, 1976. The following day, shortly after Ms. Munford reported for work, Harris asked her to accompany him to the 25th floor to get office supplies. While they were on this errand, Harris made overt sexual suggestions to Ms. Munford which she rebuffed. Harris indicated that Ms. Munford's job might be dependent on whether or not she acceded to his demands.

Over the next several days Harris made repeated sexual suggestions and innuendoes to Ms. Munford, both verbally and through acts of petty harassment such as leaving cartoons on her desk. She repeatedly indicated that she was not interested in a sexual liaison with him. When she finally told him that she was going to report his offensive behavior to Mr. Zulcosky, Harris's supervisor, Harris replied that she would only succeed in getting herself fired since Zulcosky was his friend.

On February 12, 1976, Harris told Ms. Munford that she was to accompany him to Grand Rapids on a business trip and that she was to stay overnight in the same motel room and have sexual relations with him. Ms. Munford replied that she would accompany him on the business trip but would not stay in his motel room nor have sexual intercourse with him. When Harris repeated his demands on the following day, Ms. Munford made the same reply. Harris then told her he was going to discharge her, and in fact did so.

Immediately following her dismissal, Ms. Munford went to Zulcosky, related the entire sequence of events and protested her discharge. Zulcosky told her that he would have to back up Harris and that the termination would stand. In further protest, Ms. Munford met with Harris, Zulcosky, James T. Barnes, and attorneys representing the various parties on a subsequent occasion, but the company declined to make any offer of settlement of Ms. Munford's grievances.

Plaintiff contends that her discharge from James T. Barnes Co. because she refused to have sexual relations with her supervisor was employment discrimination unlawful under Title VII of the Civil Rights Act of 1964 and the 14th Amendment of the U. S. Constitution. 42 U.S.C. § 2000e–2 (Title VII § 703) reads in pertinent part:

(a) It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges or employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment

in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

Five cases have squarely considered the question of whether personnel action taken on the basis of a woman's refusal to accede to the sexual demands of a supervisor is employment discrimination cognizable under Title VII. In *Corne v. Bausch and Lomb, Inc.*, 390 F.Supp. 161 (D.Ariz.1975), two women sued their supervisor, Leon Price, and the company they worked for, Bausch and Lomb, Inc., for sexual harassment which they found so onerous that they were forced to resign from their jobs. The court dismissed the complaint against Bausch and Lomb, finding that there was no company policy which condoned the activity of the supervisor and further holding that the sexual harassment described by the plaintiffs was not the sort of activity contemplated by the proscriptions of Title VII. The court observed:

> In all of the above-mentioned cases the discriminatory conduct complained of arose out of company policies. There was apparently some advantage to, or gain by, the employer from such discriminatory practices. Always such discriminatory practices were employer designed and oriented. In the present case, Mr. Price's conduct appears to be nothing more than a personal proclivity, peculiarity or mannerism. By his alleged sexual advances, Mr. Price was satisfying a personal urge. Certainly no employer policy is here involved; rather than the company being benefited in any way by the conduct of Price, it is obvious it can only be damaged by the very nature of the acts complained of.

> Nothing in the complaint alleges nor can it be construed that the conduct complained of was company directed policy which deprived women of employment opportunities. A reasonably intelligent reading of the statute demonstrates it can only mean that an unlawful employment practice must be discrimination on

the part of the employer, Bausch and Lomb. Further, there is nothing in the Act which could reasonably be construed to have it apply to "verbal and physical sexual advances" by another employee, even though he be in a supervisory capacity where such complained of acts or conduct had no relationship to the nature of the employment.

> It would be ludicrous to hold that the sort of activity involved here was contemplated by the Act because to do so would mean that if the conduct complained of was directed equally to males there would be no basis for suit. Also, an outgrowth of holding such activity to be actionable under Title VII would be a potential federal lawsuit every time any employee made amorous or sexually oriented advances toward another. The only sure way an employer could avoid such charges would be to have employees who were asexual. 390 F.Supp. at 163–64.

There are two possible inferences to be drawn from the *Corne* case: First, there must be some definable employment practice attributable to the employer to hold him accountable under Title VII and secondly, sexual harassment of female employees by male supervisors is not employment discrimination within the scope of the Act. The *Corne* decision does not make clear, however, whether or not sexual harassment that *is* attributable to an employer, as opposed to merely a supervisory employee, is cognizable as sex discrimination under Title VII.

In *Williams v. Saxbe*, 413 F.Supp. 654 (D.D.C.1976), the court reached a result different from that in *Corne*. In *Williams*, the plaintiff contended that she had been discharged from her job with the Department of Justice because she had declined the sexual advances of her supervisor. The court clearly held that retaliatory actions of a male supervisor, taken because a female employee declines his sexual advances, constitutes sex discrimination within the definitional parameters of Title VII. The court reasoned that since the conduct of the supervisor created an artificial barrier to em-

ployment which was placed before one gender and not the other, despite the fact that both genders were similarly situated, such conduct constitutes actionable employment discrimination. The court rejected the defendant's contention that a finding of sex discrimination requires that the discriminatory policy or practice depend upon a *characteristic* peculiar to one of the genders, and held that any rule creating an artificial barrier to employment applied to one gender and not the other violates Title VII's prohibition against any discrimination based on sex.

The court relied heavily on the precedents of *Phillips v. Martin Marietta Corp.,* 400 U.S. 542, 91 S.Ct. 496, 27 L.Ed.2d 613 (1971) and *Sprogis v. United Air Lines,* 444 F.2d 1194 (7th Cir. 1971). In *Martin Marietta,* the Supreme Court, while vacating the decision of the Fifth Circuit because there had been no finding on the issue of bona fide occupational qualification, agreed that a policy which allowed the hiring of men who had pre-school children for certain positions but which did not allow the hiring of women with pre-school children for the same position was sex discrimination in violation of Title VII. Similarly, the Seventh Circuit in *Sprogis* found employment discrimination in a rule which required female stewardesses to be unmarried but which did not apply to male employees. The court in *Williams* reasoned that the sexual harassment case was similar to the situations in *Martin Marietta* and *Sprogis* because it involved a rule, regulation or policy which created an artificial barrier to employment which was applied to one gender but not the other, and thus constituted sex discrimination in violation of Title VII. This holding is in direct conflict with that in *Corne, supra,* where the court accepted by implication the theory that sex discrimination under Title VII must involve some type of sexual stereotyping or a policy applicable to only one of the genders because of the characteristics that are peculiar to one of the genders.

*Williams* is closer to *Corne,* however, in recognizing that a rule, regulation or policy must be specifically attributable to the employer to establish liability under Title VII. But whereas *Corne* held that the employer was not liable as a matter of law for the abusive behavior of supervisory employees, *Williams* held that the employer's liability was a question of fact to be decided at trial. The court stated:

Finally, defendants argue that plaintiff has not made out a case of sex discrimination under the Act because the instant case was not the result of a policy or a regulation of the office, but rather, was an isolated personal incident which should not be the concern of the courts and was not the concern of Congress in enacting Title VII. But this argument is merely based upon defendants' view of the facts, coupled with a fear that the courts will become embroiled in sorting out the social life of the employees of the numerous federal agencies. First, whether this case presents a policy or practice of imposing a condition of sexual submission on the female employees of the CRS or whether this was a non-employment related personal encounter requires a factual determination. It is sufficient for the purposes of the motion to dismiss that the plaintiff has alleged it was the former in this case.[8] For, if this was a policy or

[8] Paragraph 21 of the Complaint alleges that the supervisor's conduct was a policy or practice imposed on the plaintiff and other women similarly situated. This is an essential allegation for presenting a cause of action. Plaintiff's theory has never been that this was merely an isolated personal incident. 413 F.Supp. at 660–61.

practice of plaintiff's supervisor, then it was the agency's policy or practice, which is prohibited by Title VII. Secondly, the decision of the Court that plaintiff has stated a cause of action under Title VII will not have the feared result defendants urge. What the statute is concerned with is not interpersonal disputes between employees. Rather, the instant case reveals the statutory prohibition on the alleged discriminatory imposition of a condition of employment by the supervisor of an office or agency.

Thus, the court clearly held that plaintiff's allegation that the policy and practice of the supervisor was directed at other women in addition to herself was necessary and sufficient to charge an employer's practice of discrimination for the purpose of withstanding a motion to dismiss.

In *Miller v. Bank of America*, 418 F.Supp. 233 (N.D.Cal.1976) the court referred to both *Corne* and *Williams* in dismissing plaintiff's cause of action against the defendant bank. The court relied on the undisputed fact that the bank had an affirmative policy of discouraging sexual advances and a well-established grievance procedure of which plaintiff had not availed herself. Under both *Corne* and *Williams*, therefore, the bank could not be held liable under Title VII, since there was no policy attributable to the bank which would constitute sex discrimination. The court noted:

> Whether or not an employer can be held liable under Title VII for isolated acts of sexually discriminatory misconduct on the part of its lower echelon employees has not been clearly established. [citations omitted] It seems to be an issue soluble only by reference to the facts of the particular case at hand. Where, as here, however, there exists a company-wide policy expressly condemning the alleged misconduct and there exist responsive internal mechanisms established to process employee complaints of the instant sort, a failure on the part of the employee allegedly aggrieved by the condemned practice to avail him or herself of these internal avenues of redress renders tenuous a finding of employer culpability. The Court is not to be understood as holding that exhaustion of company remedies is a prerequisite to suit under Title VII. Rather, failure of exhaustion goes more to whether the employer is liable at all. 418 F.Supp. at 236 n.2.

The court went on to indicate in dicta that it did not believe that sexual harassment was the type of activity sought to be prohibited by Title VII, and that federal courts would be well-advised to avoid recognizing a cause of action in such a sensitive area. The court stated:

> [I]t would not be difficult to foresee a federal challenge based on alleged sex motivated considerations of the complainant's superior in every case of a lost promotion, transfer, demotion or dismissal. And who is to say what degree of sexual cooperation would found a Title VII claim? It is conceivable, under plaintiff's theory, that flirtations of the smallest order would give rise to liability. The attraction of males to females and females to males is a natural sex phenomenon and it is probable that this attraction plays at least a subtle part in most personnel decisions. Such being the case, it would seem wise for the Courts to refrain from delving into these matters short of specific factual allegations describing an employer policy which in its application imposes or permits a consistent, as distinguished from isolated, sex-based discrimination on a definable employee group. 418 F.Supp. at 236.

Thus *Miller* stands in substantial agreement with *Corne* and appears to reject the holding in *Williams* that any practice which places an impediment to the employment of one gender and not the other may be cognizable as sex discrimination under Title VII.

In *Tomkins v. Public Service Electric & Gas Co.*, 422 F.Supp. 553 (D.N.J.1976), the court explicitly rejected the *Williams* theory of sex discrimination and held that Title VII was not intended as a panacea for sexual misconduct on the part of supervisory personnel. The court discussed at some length the theory advanced by plaintiff and the background of Title VII:

> Title VII was enacted in order to remove those artificial barriers to full employment which are based upon unjust and long-encrusted prejudice. Its aim is to make careers open to talents irrespective of race or sex. It is not intended to provide a federal tort remedy for what amounts to physical attack motivated by sexual desire on the part of a supervisor and which happened to occur in a corporate corridor rather than a back alley. In this instance the supervisor was male and

the employee was female. But no immutable principle of psychology compels this alignment of parties. The gender lines might as easily have been reversed, or even not crossed at all. While sexual desire animated the parties, or at least one of them, the gender of each is incidental to the claim of abuse. Similarly, the pleadings in this case aver that the supervisor's advances were spurned. Had they been accepted, however, and plaintiff thereby preferred, could co-workers be heard to complain in federal court as well? It is clear that such a claim is simply without the scope of the Act. The abuse of authority by supervisors of either sex for personal purposes is an unhappy and recurrent feature of our social experience. Such conduct is frequently illegal under the penal statutes of the relevant jurisdiction. Such conduct might well give rise to a civil action in tort. It is not, however, sex discrimination within the meaning of Title VII even when the purpose is sexual. EEOC urges that a contrary decision would not open the floodgates to litigation. The Commission argues that only sexual advances from a superior to a subordinate under the cloak of the superior's authority would be actionable under Title VII, and then only if such a practice contributed to an employment-related decision. But plaintiff's theory rests on the proposition, with which this Court concurs, that the power inherent in a position of authority is necessarily coercive. And, as the representative of the EEOC candidly conceded in oral argument, every sexual advance made by a supervisor would be made under the apparent cloak of that authority. Any subordinate knows that the boss is the boss whether a file folder or a dinner is at issue. Finally, the Court recalls Judge Williams' observation in *Miller, supra*: "The attraction of males to females and females to males is a natural sex phenomenon and it is probable that this attraction plays at least a subtle part in most personnel decisions." This natural sexual attraction can be subtle. If the plaintiff's view were to pre-vail, no superior could, prudently, attempt to open a social dialogue with any subordinate of either sex. An invitation to dinner could become an invitation to a federal lawsuit if a once harmonious relationship turned sour at some later time. And if an inebriated approach by a supervisor to a subordinate at the office Christmas party could form the basis of a federal lawsuit for sex discrimination if a promotion or a raise is later denied to the subordinate, we would need 4,000 federal trial judges instead of some 400. 422 F.Supp. at 556–57.

But while the language quoted above clearly aligns *Tomkins* with *Corne* and *Miller*, the court went on to suggest that an employer may open itself to liability if it chooses to fire a female employee who registers a complaint of sexual abuse rather than investigate. The court reasoned that such action may be sex discrimination because it indicates a preference for the allegedly offending male employee over the complaining female by accepting his word against hers.

Finally, in the only Court of Appeals decision reported on this issue, the D.C. Circuit held in *Barnes v. Costle*, U.S.App.D.C., 561 F.2d 983 (1977) that a female employee whose job with a federal agency was abolished after she refused to submit to her male supervisor's sexual advances has a cause of action for sex discrimination under Title VII. First, the court substantially adopted the theory advanced in *Williams, supra*, that sexual harassment is an impediment to employment which constitutes sex discrimination because it applies to one gender and not the other. The court stated:

The District Court felt . . . that appellant's suit amounted to no more than a claim "that she was discriminated against, not because she was a woman, but because she refused to engage in a sexual affair with her supervisor." In a similar vein, appellee has argued that "[a]ppellant was allegedly denied employment enhancement not because she was a woman, but because she decided not to furnish the sexual consideration claimed

to have been demanded." We cannot accept this analysis of the situation charged by appellant. But for her womanhood, from aught that appears, her participation in sexual activity would never have been solicited. To say, then, that she was victimized in her employment simply because she declined the invitation is to ignore the asserted fact that she was invited only because she was a woman subordinate to the inviter in the hierarchy of agency personnel. Put another way, she became the target of her superior's sexual desires because she was a woman, and was asked to bow to his demands as the price for holding her job. The circumstance imparting high visibility to the role of gender in the affair is that no male employee was susceptible to such an approach by appellant's supervisor. Thus gender cannot be eliminated from the formulation which appellant advocates, and that formulation advances a prima facie case of sex discrimination within the purview of Title VII.

It is clear that the statutory embargo on sex discrimination in employment is not confined to differentials founded wholly upon an employee's gender. On the contrary, it is enough that gender is a factor contributing to the discrimination in a substantial way. That this was the intent of Congress is readily apparent from a small but highly significant facet of the legislative history of Title VII. When the bill incorporating Title VII was under consideration in 1964, an amendment that would have expressly restricted the sex ban to discrimination based solely on gender was defeated on the floor of the House. Like the Fifth Circuit, we take this as an indication of congressional awareness of the debilitating effect that such a limitation would have had on any attempt to stamp out sex-based factors irrelevant to job competence. 561 F.2d at 990–991.

The court went considerably beyond the district court decisions, however, in holding that an employer is generally chargeable with Title VII violations occasioned by discriminatory practices of supervisory personnel. While acknowledging that an employer may be exonerated if the supervisor has contravened employer policy without the employer's knowledge and the consequences are rectified when discovered, the court appeared to reject the idea that the employer must be found to have a definable policy of discrimination to be liable under Title VII. Judge MacKinnon, who wrote a separate concurring opinion, indicated that he would limit liability of a company employer to cases in which

> a plaintiff can show that, in addition to the particular sexual advance, and the retaliatory actions by the maker of that advance, other agents of the employer with knowledge of her charges assisted the retaliation or impeded the complaint. That type of showing suffices to shift to the defendant the burden of disproving that the agency had, at the least, a callous disregard of Title VII rights. 561 F.2d at 1000 (MacKinnon, J., concurring).

Reading the case law as a whole, one must infer that two distinct but interrelated questions comprise the issue of whether sexual harassment constitutes sex discrimination under Title VII. First, the court must decide whether sexual harassment is the type of activity contemplated by the Act's proscription, and secondly, the court must consider what constitutes an employment practice for which an employer may be liable.

This Court agrees with the reasoning of *Barnes* and *Williams* that sex discrimination is not limited to sexual stereotyping and that the Act prohibits any impediment to employment which affects one gender but not the other. The cases of *Phillips v. Martin Marietta Corp.*, 400 U.S. 542, 91 S.Ct. 496, 27 L.Ed.2d 613 (1971) and *Sprogis v. United Air Lines*, 444 F.2d 1194 (7th Cir. 1971), discussed above, both support such an interpretation. The legislative history as outlined in *Barnes* supports this position, and the EEOC has issued regulations under the Act which indicate that "so long as sex is a factor in the application of [an employment policy or practice], such

application involves a discrimination based on sex." 29 C.F.R. § 1604.4(a) (1975). This Court therefore rejects the defendants' contention that sexual stereotyping is the *sine qua non* of sex discrimination under Title VII and holds that an employee whose complaint alleges that she was discharged for refusing the sexual advances of her supervisor has stated a good cause of action under the Act.

The Court must still decide, however, what constitutes an employment practice of sexual harassment for which an employer may be held liable. As a preliminary matter, the Court observes that defendants Harris and Zulcosky are "employers" within the meaning of the Act, which defines employers as:

> a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person . . . 42 U.S.C. § 2000e(b).

Since Harris and Zulcosky admittedly had responsibility for making personnel decisions for James T. Barnes Co., they would be considered agents of the company at least for that purpose, and therefore within the statutory definition of employer. The company itself was Ms. Munford's actual employer, and clearly within the statutory definition.

Neither Zulcosky nor the company, however, is alleged to have engaged in actual incidents of sexual harassment. Rather, plaintiff's theory is that they are liable under the Act because they ratified without investigation the conduct of defendant Harris. The Court agrees that an employer may be liable for the discriminatory acts of its agents or supervisory personnel if it fails to investigate complaints of such discrimination. The failure to investigate gives tacit support to the discrimination because the absence of sanctions encourages abusive behavior. While the Court declines to follow the holding in *Barnes* that an employer is automatically and vicariously liable for all discriminatory acts of its agents or supervisors, the Court does hold that an employer has an affirmative duty to investigate complaints of sexual harassment and deal appropriately with the offending personnel. The plaintiff in this case has alleged that Zulcosky and James T. Barnes Co. ratified Harris's acts of discrimination by supporting her dismissal without investigating her complaint. The Court is of course not now in a position to say whether the actions of any of the defendants in fact constituted sex discrimination, since plaintiff will be required to prove her allegations at trial. But for purposes of this motion, where defendants have accepted plaintiff's allegations as true, plaintiff has stated a good cause of action under Title VII against all three defendants.

Some final comments are in order concerning two other of plaintiff's theories. First, although plaintiff claims discrimination in violation of the 14th Amendment, no state action is alleged or suggested in any pleading and in fact plaintiff's cause of action is only under Title VII. Secondly, while plaintiff claims that she was discriminated against not only because of her sex but also because of her race, nothing presented to this Court even faintly suggests racial overtones to this incident. Plaintiff's attorney indicated at oral argument that statistical sociological studies would show that plaintiff was a more likely victim of sexual harassment because she was black. The Court recognizes that statistics may form a basis for a claim of discrimination, but courts have limited their admissibility in individual actions (as opposed to class actions) to cases where the statistics are probative of the intent or motive of the specific employer. See, e. g., *Harper v. Trans World Airlines*, 525 F.2d 409 (8th Cir. 1975). The statistical basis for plaintiff's claim of race discrimination in this case appears so far removed from the behavior complained of that the Court feels obligated to dismiss that legal theory. Ms. Munford has never suggested that her encounters with Harris were more than a personal incident of sexual harassment. No

other women, black or white, are alleged to have been victims of sexual abuse while employed by James T. Barnes Co. While the Court accepts, for the reasons discussed above, that individual instances of sexual harassment may constitute sex discrimination, the behavior complained of does not state a cause of action for race discrimination.

For the reasons stated herein defendant's motion for summary judgment is denied on the issue of sex discrimination and granted on the issue of race discrimination.

An appropriate order shall be submitted.