Jody L. **ROBSON**, Plaintiff,

v.

**EVA'S SUPER MARKET, INC., et al., Defendants.**

**No. C80–1847.**

United States District Court,
N. D. Ohio, E. D.

May 4, 1982.

Jeffrey H. Friedman, Frank A. Chenette, Friedman & Chenette, Cleveland, Ohio, for plaintiff.

Martin J. Murphy, Paul D. Eklund, Davis & Young, L. P. A., Cleveland, Ohio, for defendants.

## MEMORANDUM and ORDER

BEN C. GREEN, Senior District Judge:

Plaintiff Jody L. Robson [1] worked in the meat department at defendant Eva's Super

---

**1.** Since the initiation of this action, plaintiff was married and is now known as Jody L. Parker. Her maiden name will be used herein to maintain consistency with the pleadings.

Market (Eva's) in 1979 and early 1980. She resigned her job in February, 1980, claiming sexual harassment from her supervisors. She brings this action against Eva's and the supervisors for damages and equitable relief pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., 2000e–2(a). Also alleged in the complaint are state law torts which may be heard here pursuant to the doctrine of pendent jurisdiction.

All defendants have moved for summary judgment. Plaintiff has filed a brief in opposition thereto.

At the outset, it must be noted that a motion for summary judgment may be granted only where there is no dispute as to any fact material to the cause of action. Rule 56(c), Federal Rules of Civil Procedure; *Adickes v. Kress & Co.*, 398 U.S. 144, 147, 90 S.Ct. 1598, 1602, 26 L.Ed.2d 142 (1970). Further, since only defendants have moved for summary judgment, the court must view all facts in inferences to be drawn therefrom in a light which is most favorable to the non-moving party, i.e., the plaintiff. *Adickes v. Kress & Co., supra; Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425, 427 (C.A. 6, 1972); 6 Moore, *Federal Practice 2d*, ¶ 56.15[1.–06] (1981).

Viewed in that light, it appears that the pleadings, answers to interrogatories, affidavits, and depositions establish the facts as follows.

Plaintiff, then about 19 years of age, began work for Eva's in July, 1979. She was assigned to work in the meat department as a counter clerk. Defendant Jerry Brown was the manager of the meat department and was plaintiff's supervisor. Defendant Eugene Mayfield was a meat cutter in the department and also acted, with Brown's acquiescence, as plaintiff's supervisor.

Plaintiff testified at her deposition and complains in her affidavit that, starting in December, 1979, she became the subject of frequent sexual advances and harassment from defendant Mayfield. Mayfield, she said, offered her $100 to "go to bed" with him, an advance she asserts she neither invited nor encouraged. The offer was declined.

During January, 1980, plaintiff asserts, the unwanted sexual advances continued. Mayfield, she testified, asked her to wear "tight jeans" to work, and, in the presence of Brown, directed her to perform certain work tasks in his vicinity "so I can watch her walk by." He continuously, she testified, directed profane and sexually suggestive comments to her, and stared or "leered" at her body when she was in his vicinity. Plaintiff informed Mayfield several times that such words and conduct were offensive to her.

Plaintiff also complains in her affidavit that Mayfield once "felt the back of my blouse without my permission to see whether I was wearing a bra." On another occasion, she testified, Mayfield patted her on the buttocks without her invitation or consent.

Plaintiff testified that she complained of these matters to defendant Brown on several occasions. Brown, she asserts, advised her "not to pay attention to Eugene Mayfield and not to let ... Mayfield's conduct bother me." She claims that never, to her knowledge, did Brown reprimand Mayfield for the offensive conduct nor direct Mayfield to stop.

The sexual advances and sexually suggestive conduct continued throughout January, 1980, plaintiff complains. She testified that when she rejected his advances, Mayfield reacted by becoming rude to her and by penalizing her at work.

The matter came to a boil on February 6, 1980. Brown was not at work that day, and Mayfield was plaintiff's sole supervisor. Near the end of her lunch break, plaintiff testified, Mayfield grabbed her arm roughly and told her to get back to work. Plaintiff responded that she had 15 minutes remaining on her break, and that Mayfield was hurting her arm and was frightening her.

Mayfield responded by squeezing her arm more tightly and referring to her in a sexually profane manner and saying, "I want you to be afraid of me." Mayfield then pushed her arm away roughly. In the process, she says, plaintiff suffered severe physical pain, was frightened, and her arm was bruised.

That same day, plaintiff learned from an employee in another department that Mayfield had boasted of certain sexual conduct with her. The boast, she asserts, was wholly false.

On February 8, 1980, the next day that plaintiff, Brown, and Mayfield worked together, plaintiff confronted Mayfield in Brown's presence. She demanded of Mayfield two things. First, an apology for what he had done and said. Second, a promise that he would discontinue his sexually offensive conduct toward her. Mayfield responded by grabbing her by her smock, pulling her face to his, then referring to her in a threatening and sexually profane manner. He then pushed her away. During this process, Brown was laughing.

Plaintiff then informed Brown that unless he put a stop to Mayfield's offensive conduct, that she would give two weeks' notice of her resignation. Brown replied that two weeks' notice would not be required, and that she need not report for work the next day. Plaintiff left on a scheduled lunch break and did not return.

Sometime thereafter, Eva Brunson, president of the corporation which operated the store and the store's manager, contacted plaintiff to discuss the matter. Mrs. Brunson expressed a desire to find a way in which plaintiff could return to work, but could not offer to return plaintiff to a full time job other than in her former position. Plaintiff declined to work further with Mayfield.

Defendants, apparently conceding these essential facts for purposes of their motion, move for summary judgment pursuant to a number of legal theories. Examination of defendants' assertions discloses that, taken together, they move to dismiss the action because no facts exist upon which relief could be granted.

An examination of plaintiff's response to the motion discloses that the parties have widely divergent views as to the law which should be applied to the facts in this action. The Court therefore finds that it will be useful to create a framework in which defendants' specific legal theories may be discussed.

Title 42, U.S.C., Section 2000e–2(a) reads, in pertinent part:

It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of an individual's ... sex; or

(2) to limit, segregate or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's sex ....

Sexual harassment is generally accepted as a cause of action pursuant to this section, although the elements of a prima facie case are not fully settled. *See, Bundy v. Jackson*, 641 F.2d 934 (C.A.D.C., 1981); *Walter v. KFGO Radio*, 518 F.Supp. 1309 (D.N. Dak., 1981), and extensive cases cited at, *id.* 1315; *Annotation*, 46 A.L.R.Fed. 224 (1980).

The Equal Employment Opportunity Commission (EEOC) has been charged by Congress with the administrative enforcement of Title VII, and has been given the authority to promulgate interpretive regulations. Pursuant to that authority, the EEOC issued regulations at 29 C.F.R. § 1604.11(a), (b) (1980) which provide that under certain conditions, sexual harassment will constitute a violation of Title VII. This Court is bound to give great deference to these regulations. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 431, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975); *Griggs v. Duke Power Co.*, 401 U.S. 424, 433–34, 91 S.Ct. 849, 854–55, 28 L.Ed.2d 158 (1971).

As here pertinent, the regulations read:

(a) Harassment on the basis of sex is a violation of Sec. 703 of Title VII. Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or (3) such conduct has the purpose or effect of substantially interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.

(b) In determining whether alleged conduct constitutes sexual harassment, the Commission will look at the record as a whole and at the totality of the circumstances, such as the nature of the sexual advances and the context in which the alleged incidents occurred. The determination of the legality of a particular action will be made from the facts, on a case by case basis.

The Court does not understand plaintiff to allege that submission to Mayfield's advances was, at least initially, either explicitly or implicitly a term or condition of her employment. There does not appear to be facts in the record from which it could be inferred that plaintiff was denied a promotion or increase in salary, or was in danger of an employer-initiated discharge because she resisted Mayfield's overtures.

█ Plaintiff does allege, however, and there are assertions in the record which tend to show, that her rejection of Mayfield's advances were used by Mayfield as a basis for assigning her more onerous tasks and by generally "penalizing" her at work. As such, the facts would support a finding that her rejection of Mayfield's advances was used as a basis for employment decisions affecting her.

Further, there is abundant evidence in the record from which it could be found that Mayfield's conduct had:

(3) . . . the effect of substantially interfering with [the plaintiff's] work performance or creating an intimidating, hostile, or offensive work environment.

It has been asserted that Mayfield twice physically assaulted plaintiff, once by grabbing her arm and once by pulling her face toward his. It has been asserted that Mayfield expressly told plaintiff that he wanted her to be afraid of him. Such assertions could certainly support a finding that Mayfield's actions created an intimidating and hostile work environment. And it has been asserted that Mayfield patted plaintiff's buttocks and felt the back of her blouse to see if she was wearing a bra, each time without invitation or permission. It has further been asserted that Mayfield offered her money to engage in sexual relations with him, asked her to wear "tight jeans" to work, directed her to perform work tasks in his presence so he could "watch her walk by," and constantly stared and "leered" at her. Finally, it has been asserted that Mayfield falsely told other employees in the store that he had engaged in sexual conduct with plaintiff. Such assertions could certainly support a finding that Mayfield's actions created an offensive and hostile work environment.

The Court thus finds that the factual assertions appearing in the record to date do state a cause of action pursuant to Title VII. The Court will thus turn to the specific legal theories advanced by defendants to determine if any of such theories would defeat the cause of action.

█ Defendants first claim that no employer may be held liable for sexual harassment if the employer investigates the complaints of the worker and "deal[s] effectively with the offending personnel." *Munford v. James T. Barnes & Co.*, 441 F.Supp. 459 (E.D.Mich., 1977). Because Eva personally investigated plaintiff's complaints of offensive sexual advances following plaintiff's resignation, defendants assert, plaintiff may not recover.

This argument lacks merit in this motion for summary judgment as there is no clear factual basis for it. The record does not

reflect what, if anything Mrs. Brunson did to "investigate" plaintiff's complaints. The record does, however, show that plaintiff's earlier complaints to her supervisor, Brown, were met only with instructions not to allow the offensive conduct to bother her. The record does not reflect any action whatever by Brown to investigate plaintiff's complaints. Nor does the record reflect that Mayfield was at any time reprimanded or otherwise "deal[t] effectively with" because of his unwelcome advances toward plaintiff. *See, Kyriazi v. Western Electric Co.*, 461 F.Supp. 894, 936–939 (D.N.J., 1978).

Therefore, there is no clear factual basis for defendants' first claim upon which summary judgment could issue.[2]

■ Defendants' second claim is that plaintiff could be entitled to no recovery unless submission to Mayfield's advances adversely affected a "term or condition of employment." As the Court noted earlier, the regulations of the EEOC, to which the Court must defer, define sexual harassment as a violation of Title VII, and in terms much more broadly than harassment which impacts solely terms and conditions of employment. Other courts which have confronted the issue directly have accepted the broad reading given the statute by the EEOC, and have rejected defendants' assertions. *See, e.g., Bundy v. Jackson*, 641 F.2d 934, 944 (C.A.D.C., 1981); *Miller v. Bank of America*, 600 F.2d 211 (C.A. 9, 1979); *Morgan v. Mertz Corp.,* 27 FEP Cases 990, 50 U.S.L.W. 2402 (W.D.Tenn., 1981); *Kyriazi v. Western Electric Co.*, 476 F.Supp. 335 (D.N.J., 1979). Thus, plaintiff may claim a cause of action if defendants' actions toward her impact areas other than a "term or condition of employment," and she has done so here.

There is another reason why defendants' second claim is without merit. Plaintiff has

argued alternatively that even if the terms and conditions of employment are the sole touchstone of a sexual harassment action, she was constructively discharged by defendants' actions and therefore has suffered injury cognizable under that limited definition. Defendants have responded by asserting, first, that the doctrine of constructive discharge is not applicable to Title VII actions, and, second, that the doctrine is not accepted within this judicial circuit. Neither assertion is correct.

■ It seems well established that the doctrine of constructive discharge does apply to Title VII cases. *See, e.g., Brown v. Eckerd Drugs, Inc.*, 663 F.2d 1268, 1272 (C.A. 4, 1981); *Young v. Southwestern Savings and Loan Association*, 509 F.2d 140, 144 (C.A. 5, 1975); *Rimedio v. Revlon, Inc.*, 528 F.Supp. 1380, 1389 (S.D.Ohio, 1982). Pursuant to the doctrine, a resignation of an employment position will be considered a discharge by the employer if the employee resigned (a) because of intolerable working conditions, (b) caused by unlawful discrimination or unlawful acts on the part of the employer, (c) which a reasonable person would feel compelled such person to resign. *Bourque v. Powell Electric Manufacturing Co.*, 617 F.2d 61 (C.A. 5, 1980); *Jacobs v. Martin Sweets, Inc.*, 550 F.2d 364 (C.A. 6, 1977); *Young v. Southwestern Savings and Loan Association, supra; cf. N. L. R. B. v. Cavalier Olds, Inc.*, 421 F.2d 1234 (C.A. 6, 1970). The doctrine has been recognized in this judicial circuit. *Jacobs v. Martin Sweets, Inc., supra; N. L. R. B. v. Cavalier Olds, Inc., supra; N. L. R. B. v. Tennessee Packers, Inc., Frosty Morn Division*, 339 F.2d 203 (C.A. 6, 1977); *Rimedio v. Revlon, Inc., supra.*

■ Defendants' fourth assertion is made on behalf of defendant Mayfield who claims that since he was not, in fact, plaintiff's

---

**2.** Entwined with defendants' first theory is the claim that since she failed to exhaust her available grievance procedures, her Title VII action is barred. In making this claim, defendants rely solely on the district court opinion in *Miller v. Bank of America*, 418 F.Supp. 233 (N.D. Cal., 1976), *reversed*, 600 F.2d 211 (C.A. 9,

1979). It does not appear that any grievance procedure existed to which plaintiff could have turned, and in any event exhaustion of grievance procedures is not a prerequisite to a Title VII action. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974).

supervisor, he cannot be held liable under Title VII. There appears to be a genuine issue of material fact in this matter. Plaintiff claims that Mayfield acted at all times during her employment as her supervisor. When defendant Brown was absent from work, she claims, Mayfield was her sole supervisor. When Brown was present, she testified, Mayfield continued to act as a supervisor, albeit subordinate to Brown, by directing her to perform specific tasks. Mayfield claims that he had no authority, express or implied, over plaintiff.

Since there is an issue of fact as to whether Mayfield was plaintiff's supervisor, the matter is not one upon which summary judgment may issue. This issue is one which will need to be resolved by the trier of fact at trial.

█ Defendants' fourth assertion is made on behalf of defendant Brown. Brown, it is claimed, participated in no acts of sexual discrimination against plaintiff and therefore cannot be held liable under Title VII. This claim is without merit. It is well established in this district that an employer or supervisor may be held liable for employment discrimination where the employer or supervisor acquiesces or condones unlawful acts practiced by subordinates. *Munford v. James T. Barnes & Co.*, 441 F.Supp. 459 (E.D.Mich., 1977); *Bell v. St. Regis Paper Co.*, 425 F.Supp. 1126 (N.D. Ohio, 1976); *cf. Howard v. National Cash Register Co.*, 388 F.Supp. 603 (S.D.Ohio, 1975). Other courts have noted that the term "employer" as used in 42 U.S.C. § 2000e–2(a) is defined in § 2000e(b) to include "any agent" of the employer. *Miller v. Bank of America*, 600 F.2d at 213. Since Brown was admittedly plaintiff's supervisor, there are facts in this case from which it could be determined that he was the "agent" of Eva's. And there are facts in evidence from which it could be found that Brown acquiesced in Mayfield's sexual harassment of plaintiff. Brown, it is claimed, responded to plaintiff's early complaints of harassment by instructing her to ignore Mayfield and "not let him bother you." *See, Kyriazi v. Western Electric Co.*,

461 F.Supp. at 936–939. Later, it is claimed, when plaintiff confronted Mayfield in his presence with her complaints, Brown laughed when Mayfield responded to plaintiff in a threatening and profane manner. And it is also claimed that when plaintiff demanded that Brown either put a stop to Mayfield's conduct or accept her resignation, Brown chose the latter course.

In light of these factual assertions, the Court cannot say that Brown did not acquiesce in Mayfield's behavior. Summary judgment cannot issue in Brown's favor.

Defendants' final claims involve challenges to the state law torts pleaded, i.e., negligent and intentional infliction of emotional distress.

Defendants' first challenge assumes that this Court would dismiss the underlying Title VII action and thus leave the pendent tort claims without a jurisdictional basis. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Since plaintiff's Title VII action has survived the motion for summary judgment, the assertion is without factual support.

Defendants' second challenge to the pendent tort actions is that Ohio law recognizes neither negligent nor intentional infliction of emotional distress as compensable. This claim is without support.

The parties agree that Ohio law applies to the pendent claims. In *Columbus Finance Co. v. Howard*, 42 Ohio St.2d 178, 327 N.E.2d 654 (1975), the Ohio Supreme Court held (a) a negligent act which has as one proximate result emotional distress or pain may give rise to damages for such pain provided there is contemporaneous physical injury, and (b) damages for the intentional infliction of emotional distress may be awarded absent physical injury where the defendant's conduct was intentional, wanton or outrageous.

█ Plaintiff has asserted herein that on the occasion when defendant Mayfield grabbed her arm, told her to get back to work, then referred to her in a sexually profane manner, he bruised the arm. There exists an issue of fact as to whether such a

bruise constitutes the requisite physical injury necessary to support a claim for damages founded on merely negligent behavior.

■ Whether the bruise rises to the level of that physical injury necessary to allow damages for negligent behavior may be academic. There are facts alleged from which it could be determined that his actions were intentional, wanton, or outrageous. If such a finding was made, then the extent of injury would be immaterial and damages for emotional pain, fright, and humiliation could be awarded by the trier of the fact.

In sum, then, it appears that plaintiff has alleged a factual basis for a claim of sexual harassment cognizable under Title VII. And it does not appear that either a legal or clear factual basis exists upon which summary judgment could issue in defendants' favor.

Defendants' motion for summary judgment is denied.

IT IS SO ORDERED.