**Diane R. WILLIAMS, Plaintiff,**

**v.**

**William B. SAXBE et al., Defendants.**

**Civ. A. No. 74–186.**

United States District Court,
District of Columbia.

April 20, 1976.

Michael D. Hausfeld, Jerry S. Cohen, Herbert E. Milstein, Washington, D. C., for plaintiff.

Thomas G. Corcoran, Jr., Asst. U. S. Atty., Robert Ford, Chief, Civil Div., Washington, D. C., for defendants.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

Plaintiff, Diane R. Williams, brings this action to recover damages and for other relief as a result of defendants' alleged violations of the provisions of Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e et seq., and other acts of Congress; specifically, plaintiff alleges that she has been denied equal employment opportunities in the Department of Justice because of her sex. Plaintiff was a female employee of the Community Relations Service ("CRS") of the Department of Justice from approximately January 4, 1972 to September 22, 1972, at which time her employment with the CRS was terminated. Defendants are the Attorney General of the United States and the Director of the CRS of the Department of Justice.

This action is before the Court at this time for review of the administrative record. Pending before the Court are defendants' motion to dismiss, defendants' renewed motion for summary judgment, and plaintiff's motion for judgment. While plaintiff originally sought a trial de novo, plaintiff has since stipulated to have the Court render a final decision on the agency record.[1]

This Court perceives there being two issues presented for resolution. The first issue is whether the retaliatory actions of a male supervisor, taken because a female employee declined his sexual advances, constitutes sex discrimination within the definitional parameters of Title VII of the Civil Rights Act of 1964. The second issue is twofold: how should the administrative record be reviewed, and what result should be reached based on the record.

In order to properly address the first issue, the factual and procedural background of this action must be considered.

## I. BACKGROUND

On January 4, 1972, plaintiff began her employment with the CRS as a public information specialist ("PRO"), Grade GS–7, under a temporary appointment not to exceed one month. Within a short time after her employment commenced, the Civil Service Commission reviewed plaintiff's status and converted her appointment to a career conditional, Grade GS–8, effective January 23, 1972, subject to a one-year probationary period, retroactive from January 4, 1972. During plaintiff's employment, her immediate supervisor was a Mr. Harvey Brinson. On September 11, 1972, Mr. Brinson advised the plaintiff of his intention to terminate her and, by notice dated September 21, 1972, her termination was made effective on September 22, 1972. In the interim, September 13 to be exact, plaintiff filed a formal complaint alleging sex discrimination.

Plaintiff's discrimination complaint alleged, in essence, that she had had a good working relationship with Mr. Brinson up until she refused a sexual advance made by Mr. Brinson in June. She asserted that thereafter Mr. Brinson engaged in a continuing pattern and practice of harassment and humiliation of her, including but not limited to, unwarranted reprimands, refusal to inform her of matters for the perform-

1. Plaintiff's decision was made while the appeal in *Hackley v. Johnson,* 360 F.Supp. 1247 (D.D.C.1973) was still pending. The court of appeals has since rendered its decision affirm- ing the right to a trial de novo in federal employee Title VII cases. *Hackley v. Roudebush,* 171 U.S.App.D.C. 376, 520 F.2d 108 (1975).

ance of her responsibilities, refusal to consider her proposals and recommendations, and refusal to recognize her as a competent professional in her field. On the other hand, the alleged basis for terminating plaintiff was her poor work performance during this same period.

After an investigation of plaintiff's allegations was conducted, plaintiff received notice from an Equal Employment Opportunity officer that a finding of no discrimination was proposed and that she had various options to pursue, including an administrative hearing. Plaintiff elected to have the hearing, which was held in May and June of 1973. On September 11, 1973, the Complaints Examiner issued his recommended decision, which was a finding of no discrimination based on sex. This recommendation was adopted by the Complaint Adjudication Officer on December 21, 1973, apparently because in the agency's view the evidence did not establish "any causal relationship" between her rejection of Mr. Brinson and his subsequent treatment of her and her ultimate termination. Plaintiff then filed the instant action.

Upon its initial review of the record, this Court determined that the record revealed proof suggestive of discrimination on the basis of sex. The Court also found that at the agency level the government made no attempt to show an absence of discrimination, but rather, the onus appeared to have been placed on the plaintiff to affirmatively prove sex discrimination. The Court therefore remanded the case to the agency for additional administrative hearings wherein the government would have the burden to affirmatively establish the absence of discrimination by the clear weight of the evidence, citing *Hackley v. Johnson,* 360 F.Supp. 1247 (D.D.C.1973).

On remand, the second Hearing Examiner found that the agency had not met its burden. Additionally, the Examiner concluded that plaintiff "was discriminated against because of sex in the acts of her immediate supervisor in intimidating, harassing, threatening and eventually terminating her." Hearing Examiner's decision

of Feb. 21, 1975, at 4–5. The Examiner based his decision on a finding that Mr. Brinson was of a disposition to and did make personal advances towards [the plaintiff] and that these advances were rejected by [the plaintiff]," *id.* at 4, and that at that time, May 1972, he could not conclude that Mr. Brinson was "truly experiencing work performance and/or conduct difficulties with [the plaintiff]." *Id.* at 3. In concluding his analysis, the Examiner stated:

A review of the proposed termination notice and of Mr. Brinson's testimony concerning the merits of the reasons for complainant's termination shows that such reasons were not serious deficiencies in work performance and/or conduct. It appears that many of the reasons were based on incidents in which good supervision would have been preventative, and that good supervision was not forthcoming because of the situation which Mr. Brinson had created by his attempts at fostering a personal relationship with complainant and the subsequent rejection.

Because all of the incidents occurred or were noted within a time period of June to August 1972, it is difficult to accept the premise that complainant, who had been a relatively good employee during the first six months of her employment, would have so many deficiencies noted in such a short time period. The alleged enumerated deficiencies occurring simultaneously with a rejection of personal advances based on sex, lends itself to an inference of sex discrimination. In my opinion, the agency has not sufficiently produced evidence consistent with its burden to affirmatively establish the absence of sex discrimination by the clear weight of the evidence in this case.

*Id.* at 4. The Examiner therefore recommended that the plaintiff be reinstated with back pay.

The Complaint Adjudication Officer, who was the same officer that reviewed the first Complaints Examiner's recommendation as well, rejected the recommendation of the second Hearing Examiner in an opinion

dated March 12, 1975. After expressing some consternation over the fact that the Court did not specifically identify what evidence was suggestive of discrimination, the Complaint Adjudication Officer reviewed the Examiner's recommendation, and found that he could not "conclude that [the plaintiff's] termination resulted from sex discrimination within the meaning of the Department's equal employment opportunity regulations." Complaint Adjudication Officer's decision of March 12, 1975, at 7.

It is obvious to this Court, and apparently to the parties, that it was the opinion of the Complaint Adjudication Officer, and thus the agency, that the conduct complained of in this case does not come within the definitional parameters of sex discrimination. Defendants have reasserted this opinion, claiming that the complaint therefore does not state a cause of action and should be dismissed.

## II. RETALIATORY ACTIONS OF A MALE SUPERVISOR, TAKEN BECAUSE A FEMALE EMPLOYEE DECLINED HIS SEXUAL ADVANCES, CONSTITUTES SEX DISCRIMINATION WITHIN THE DEFINITIONAL PARAMETERS OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964.

■ As noted above, the motion to dismiss presents the issue of whether the retaliatory actions of a male supervisor, taken because a female employee declined his sexual advances, constitutes sex discrimination within the definitional parameters of Title VII of the Civil Rights Act of 1964, as amended. This Court finds that it does. Defendants, however, make a cogent and almost persuasive argument to the contrary.

The defendants' argument is bottomed on locating the "primary variable" in the alleged class, which must be the gender of the class member to come within the protection of Title VII of the Civil Rights Act. Defendants reason that:

"Examination of . . . cases where sex discrimination has been found reveals that the particular stereotype involved may well have caused the creation of the class. However, the impetus for creation of the class must be distinguished from the primary variable which describes the class. The impetus for creation of the class may well be a sexual stereotype, i. e. women are weak, or women are not business-minded, but the class itself cannot be described, the boundaries cannot be set in terms of stereotypes. Rather, the class is described, by a variable which distinguishes its members from people outside the class. In previous sex discrimination cases, this primary variable was gender and, therefore, the applicability of the Act was triggered. Thus, conceptually, sexual stereotypes are irrelevant to the actual determination of whether an impermissible class exists. For example, if an employer enforced a policy that only women could be 'roustabouts,' an impermissible classification would arise, a classification described by the primary variable, gender, and the Act would be triggered despite the absence of a sexual stereotype. Therefore, in the instant case, even assuming that a sexual stereotype was at the root of Brinson's alleged imposition of a sexual condition, such a factor is irrelevant to the description of the alleged class. Accordingly, since the primary variable in the claimed class is willingness vel non to furnish sexual consideration, rather than gender, the sex discrimination proscriptions of the Act are not invoked. Plaintiff was allegedly denied employment enhancement not because she was a woman, but rather because she decided not to furnish the sexual consideration claimed to have been demanded. Therefore, plaintiff is in no different class from other employees, regardless of their gender or sexual orientation, who are made subject to such carnal demands." Defendants' Brief in Support of the Motion to Dismiss, at 5–6.

While defendants' argument is appealing, it obfuscates the fact that, taking the facts of the plaintiff's complaint as true, the conduct of the plaintiff's supervisor created an artificial barrier to employment which was placed before one gender and not the other,

despite the fact that both genders were similarly situated. It is the opinion of this Court that plaintiff has therefore made out a cause of action under 42 U.S.C. § 2000e–16(a). The reason for this Court's opinion is that it rejects the defendants' narrow view of the prohibition of the statute, which is the result of what this Court perceives as an erroneous analysis of the concept of sex discrimination as found in Title VII, to which the Court now turns.

The fact that "Congress intended to strike at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes," *Sprogis v. United Air Lines, Inc.*, 444 F.2d 1194, 1198 (7th Cir. 1971),[2] does not mean that only a "sex stereotype" can give rise to sex discrimination within Title VII. The statute prohibits "*any* discrimination based on . . . sex. . . ." Subsection 717(a) of the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e–16(a). [Emphasis added]. On its face, the statute clearly does not limit discrimination to sex stereotypes. And while there is language in the legislative history of the amendment that indicates that Congress did want to eliminate impediments to employment erected by sex stereotypes, these expressions do not provide a basis for limiting the scope of the statute, particularly since there is ample evidence that Congress' intent was not to limit the scope and effect of Title VII, but rather, to have it broadly construed.[3] Furthermore, the plain meaning of the term "sex discrimination" as used in the statute encompasses discrimination between genders whether the discrimination is the result of a well-recognized sex stereotype or for any other reason. It is important in this regard to note that Title VII is applicable to men as well as to women.[4]

There therefore can be no question that the statutory prohibition of § 2000e–16(a)

reaches *all* discrimination affecting employment which is based on gender. While the defendants would appear to agree that it is not essential that a "sex stereotype" be the cause of the disparate treatment, it is their view that a policy or practice is not sex discrimination within the meaning of § 2000e–16(a) unless the class is described by what they call the primary variable, i. e. gender. Defendants' analysis goes one step further. They contend that § 2000e–16(a) sex discrimination may only be found when the policy or practice is applicable to only one of the genders because of the characteristics that are peculiar to one of the genders. When applied to this case, defendants' analysis has produced the argument that since the criteria of "willingness to furnish sexual consideration" could be applied to both men and women, then the class cannot be said to be defined *primarily* by gender and therefore there can be no § 2000e–16(a) sex discrimination.

■ Defendants' argument must be rejected because a finding of sex discrimination under § 2000e–16(a) does not require that the discriminatory policy or practice depend upon a characteristic peculiar to one of the genders. That a rule, regulation, practice, or policy is applied on the basis of gender is alone sufficient for a finding of sex discrimination. *Phillips v. Martin Marietta Corp.*, 400 U.S. 542, 91 S.Ct. 496, 27 L.Ed.2d 613 (1971); *Sprogis v. United Air Lines, Inc., supra.* In *Martin Marietta*, the Supreme Court, while vacating the decision of the Fifth Circuit, accepted the Fifth Circuit's finding that there was discrimination even though it was not based upon a characteristic peculiar to one gender. The Fifth Circuit had held that a policy which allowed the hiring of men who had pre-school children for certain positions, but not allowing the hiring of women with pre-school chil-

---

**2.** While *Sprogis* was a private sector case arising under 42 U.S.C. § 2000e–2, its analysis is applicable to federal employee cases under § 2000e–16. See H.R.Rep. No. 92–238, 92nd Cong., 1st Sess. (1971) and S.Rep. No. 92–415, 92d Sess., 1st Cong. (1971), U.S.Code Cong. & Admin.News 1971, p. 2137.

**3.** See *Willinghan v. Macon Telegraph Publishing Co.*, 482 F.2d 535, 537 n. 2 (5th Cir. 1973).

**4.** See e. g., *Utility Workers Union v. Southern California Edison Co.*, 2 E.P.D. ¶ 10,133 (C.D. Cal.1969).

dren for the same position, was sex discrimination in violation of Title VII. 411 F.2d 1 (1969). The court of appeals rejected the argument that sex discrimination could only be found if the policy depended solely upon gender. Rather, the court stated:

■ We are of the opinion that the words of the statute are the best source from which to derive the proper construction. The statute proscribes discrimination based on an individual's race, color, religion, sex, or national origin. A per se violation of the Act can only be discrimination based solely on one of the categories i. e., in the case of sex; women vis-a-vis men. When another criterion of employment is added to one of the classifications listed in the Act, there is no longer apparent discrimination based solely on race, color, religion, sex or national origin. It becomes the function of the courts to study the conditioning of employment on one of the elements outlined in the statute coupled with the additional requirement, and to determine if any individual or group is being denied work due to his race, color, religion, sex or national origin. *Id.* at 3–4.

The Supreme Court did not reject this analysis, but rather, vacated the lower court's decision because the practice could have been permissible if there was evidence to show that it was a "bona fide occupational qualification" under § 703(e) of the Act. 400 U.S. at 544, 91 S.Ct. at 497–98, 27 L.Ed.2d at 615–16.

The *Sprogis* case concerned a "no-marriage" rule which provided that stewardesses had to be unmarried when hired and remain unmarried under penalty of discharge. 444 F.2d at 1196, 1196 n. 2. The no-marriage rule could have been applied to men as well as women, since both are capable of marriage. The criteria of marriage can also not be said to be a characteristic peculiar to one of the genders. Nevertheless, the court held that the rule resulted in sex discrimination in violation of Title VII. *Id.* at 1198. The court found it sufficient that the rule was applied to women and not to men, despite the fact that they were similarly situated.[5]

The requirement of willingness to provide sexual consideration in this case is no different from the "pre-school age children" and "no-marriage" rules of *Martin Marietta* and *Sprogis.* As here, none of those rules turned upon a characteristic peculiar to one of the genders. It was and is sufficient to allege a violation of Title VII to claim that the rule creating an artificial barrier to employment has been applied to one gender and not to the other. Therefore, this Court finds that plaintiff has stated a violation of Title VII's prohibition against "any discrimination based on . . . sex. . ."[6]

The recent case of *Geduldig v. Aiello*, 417 U.S. 484, 94 S.Ct. 2485, 41 L.Ed.2d 256 (1974) does not require that the defendants' interpretation or, rather, limitation of § 2000e–16(a) sex discrimination be accept-

5. The court also deferred to the agency's interpretation of the Act that " 'so long as sex is a factor in the application of the rule, such application involves a discrimination based on sex.' 29 CFR § 1604.3(a)." 444 F.2d at 1198.

6. This court also rejects any argument that this cannot be sex discrimination because the application of the rule would depend upon the sexual preference of the supervisor, as opposed to some other reason. But the reason for the discrimination under Title VII is not necessary to a finding of discrimination. Cf. *Griggs v. Duke Power Co.*, 401 U.S. 424, 432, 91 S.Ct. 849, 854, 28 L.Ed.2d 158, 165 (1971) ("But Congress directed the thrust of the Act to the *consequences* of employment practices, not simply the motivation.") Rather, the reason for the discrimination may only be relevant in

considerations of whether the policy or practice is based upon a bona fide occupational requirement. 400 U.S. at 545, 91 S.Ct. at 498, 27 L.Ed.2d at 616; 444 F.2d at 1198–1201.

It is also notable that since the statute prohibits discrimination against men as well as women, a finding of discrimination could be made where a female supervisor imposed the criteria of the instant case upon only the male employees in her office. So could a finding of discrimination be made if the supervisor were a homosexual. And, the fact that a finding of discrimination could not be made if the supervisor were a bisexual and applied this criteria to both genders should not lead to a conclusion that sex discrimination could not occur in other situations outlined above.

ed. The *Geduldig* analysis has been found to be inapplicable to Title VII cases. See Lombard, *Sex: A Classification in Search of Strict Scrutiny*, 21 *Wayne L.Rev.* 1355, 1366, 1366 n. 47–52 (1975); see also *Communication Workers of America v. A.T. & T. Co.*, 513 F.2d 1024 (2d Cir. 1975). This is understandable since *Geduldig* concerned the question of whether the refusal to extend insurance protection to pregnancy as a covered disability under a state insurance program resulted in an invidious discrimination in violation of the Constitutional standard as opposed to the statutory standard of Title VII.[7]

Nor do the so-called "hair cases" cited by the defendants, *Dodge v. Giant Food, Inc.*, 160 U.S.App.D.C. 9, 488 F.2d 1333 (1973); *Fagan v. National Cash Register Co.*, 157 U.S.App.D.C. 15, 481 F.2d 1115 (1973); *Boyce v. Safeway Stores, Inc.*, 351 F.Supp. 402 (D.D.C.1972), require that this Court adopt the analysis asserted by the defendant. In one of those cases, the regulation or policy was found applicable to both men and women, 481 F.2d at 1124 n. 20; 351 F.Supp. at 403. Further, the courts in all of these cases found that any disparate treatment in the regulation or policy involved was permissible under the exception found in § 703(e) of the Act. E. g., 481 F.2d at 1125. But this finding should not be confused with the threshold analysis of whether sex discrimination is extant. Disparate treatment was assumed in two of those cases. What they were then concerned with was whether the disparate treatment was permissible under the exception to the Act. See also *Weeks v. Southern Bell Tel. & Tel. Co.*, 408 F.2d 228 (5th Cir. 1969). The only case of any distinction, *Dodge*, refused to find sex discrimination because the Court concluded that: "Title VII never was intended to encompass sexual classifications having only an insignificant effect on employment opportunities." 488 F.2d at 1337. Assuming Title VII permits a weighing of the effect of a particular policy or regulation, this Court could not find the instant policy or practice to have an insignificant effect.

Nor does this Court agree that it should adopt the agency's interpretation merely because it is entitled to be given extra consideration. Since this Court has found that the agency's interpretation does not comport with the scope and purpose of the statute, this court may reject the agency's decision. *Volkswagenwerk Aktiengesellschaft v. Federal Maritime Commission*, 390 U.S. 261, 272, 88 S.Ct. 929, 935–36, 19 L.Ed.2d 1090, 1097–98 (1968).

■ Finally, defendants argue that plaintiff has not made out a case of sex discrimination under the Act because the instant case was not the result of a policy or a regulation of the office, but rather, was an isolated personal incident which should not be the concern of the courts and was not the concern of Congress in enacting Title VII. But this argument is merely based upon defendants' view of the facts, coupled with a fear that the courts will become embroiled in sorting out the social life of the employees of the numerous federal agencies. First, whether this case presents a policy or practice of imposing a condition of sexual submission on the female employees of the CRS or whether this was a non-employment related personal encounter requires a factual determination. It is sufficient for purposes of the motion to dismiss that the plaintiff has alleged it was the former in this case.[8] For, if this was a policy or practice of plaintiff's supervisor, then it was the agency's policy or practice, which is prohibited by Title VII. Secondly, the decision of the Court that plaintiff has stated a cause of action under Title VII will

---

7. Even restricting an examination of *Geduldig* to its analysis of what is sex discrimination, this Court finds *Geduldig* distinguishable since the Court noted that "There is no risk from which men are protected and women are not." · 417 U.S. at 496–97, 94 S.Ct. at 2492, 41 L.Ed.2d at 264.

8. Paragraph 21 of the Complaint alleges that the supervisor's conduct was a policy or practice imposed on the plaintiff and other women similarly situated. This is an essential allegation for presenting a cause of action. Plaintiff's theory has never been that this was merely an isolated personal incident.

not have the feared result defendants urge. What the statute is concerned with is not interpersonal disputes between employees. Rather, the instant case reveals the statutory prohibition on the alleged discriminatory imposition of a condition of employment by the supervisor of an office of an agency.

This Court concludes that plaintiff has stated a cause of action under 42 U.S.C. § 2000e–16(a). The Court next turns to the motions for summary judgment and the administrative record.

### III. REVIEW OF THE ADMINISTRATIVE RECORD

■ As stated above, after the complaint was filed in this case the Court determined that plaintiff had presented proof suggestive of sex discrimination. The Court remanded the case because the agency had placed the burden of proof on the plaintiff rather than bearing the burden to affirmatively establish the absence of discrimination. On remand, the Hearing Examiner found that there was a causal connection between plaintiff's supervisor's conduct and plaintiff's termination and that the defendant had failed to meet its burden. See pages 656–657, *supra.* The Complaint Adjudication Officer reversed this decision on the ground that, in his opinion, the conduct complained of did not come within the meaning of sex discrimination. Plaintiff has moved for judgment on the merits, asking this Court to reject the decision of the Complaint Adjudication Officer and instate the decision of the Hearing Examiner, or alternatively to declare that the plaintiff was terminated without cause,[9] and award her appropriate relief. The defendant has filed a renewed motion for summary judgment asserting that the record demonstrated that plaintiff was terminated for good cause and that there was no causal connection between her supervisor's advances and her termination from the agency.

Review of the administrative decision of the agency in this case is complicated by the fact that the Complaint Adjudication Officer's decision, which is the final decision of the agency, was defective on two grounds. First, that the decision rejected the Hearing Examiner's decision in the belief that the administrative complaint had not set forth a cause of action under Title VII. Since this Court has found otherwise, it rejects the contrary decision of the Complaint Adjudication Officer. Second, the Complaint Adjudication Officer rejected the decision of the Hearing Examiner because he thought the Examiner failed to consider the testimony of Ms. Ruth Spencer that was adduced at the supplementary hearings. He predominantly relied upon this testimony to conclude that the termination of plaintiff's employment was based on a "clash between two apparently strong-willed persons neither of whom would submit to the other" and was therefore not based on sex discrimination. Unfortunately, he does not reveal under what standard this conclusion was reached, nor does his decision indicate whether he viewed the plaintiff or the defendant having the burden of proof. In this Court's opinion, the decision of the Complaint Adjudication Officer is therefore wholly unsatisfactory to the point of being practically incapable of review.

Under these circumstances, this Court would normally remand the case to the administrative agency so that the Complaint Adjudication Officer could properly review the decision of the hearing examiner. See Davis, *Administrative Law Treatise* § 16.05 at 323 (1972). However, this Court has previously remanded this case to the administrative agency under directions to apply the proper standards and believes that it would be unjust as well as contrary to the intent of Title VII to remand the case again. The Court has therefore completely reviewed the record, as supplemented, to determine whether the Hearing Ex-

---

**9.** Relief could not be granted on this basis since dismissal without cause was not alleged in the complaint. While the administrative record might lead one to assume that lack of "cause"

in itself was the issue, this appears to have been due to the proofs proffered by counsel, rather than the nature of the complaint.

aminer's decision that the government had failed to affirmatively establish the absence of discrimination by the clear weight of the evidence was based on substantial evidence and was rational.[10]

This Court finds that the conclusion of the Hearing Examiner, see p. 656, *supra*, was both supported by ample evidence in the record and was a reasonable interpretation of that evidence. Plaintiff had alleged that subsequent to her rejection of her supervisor's advances as well as her supervisor's rejection of her request for a promotion, her supervisor began a program of harassment and criticism designed to have her employment terminated. The inference drawn was that since she had refused to submit to the sexual condition of her supervisor, he had retaliated by creating a basis for her discharge from the agency. The connection between the advances of her supervisor, which advances were not disputed, and the subsequent criticism by the supervisor of her work, was supported by the timing of the incident: the commencement of his criticisms of her alleged employment deficiencies when there had been no prior proof of criticism. This connection was sought to be broken by the defendant by an attempt to show that the alleged employment deficiencies of the plaintiff were true and were therefore the real reason for her discharge, and not merely a pretext. Much of the record was spent by both sides attempting to prove or disprove the allegations concerning plaintiff's work performance. The result of all of this evidence was inconclusive. The only thing that could be concluded was that plaintiff

and her supervisor were experiencing some work problems and that during this time both parties were openly critical of each other.

In reviewing the evidence from the point of view of the plaintiff, the Court finds that the record made produced little more than a prima facie case.[11] In fact, at one point it appears that the plaintiff was unclear whether she viewed her supervisor's conduct as retaliation for her refusal to submit to his advances or retaliation for her attempt to advance her employment status. Nevertheless, there was evidence to support her allegation that the advances did occur and that the retaliation was a result of her refusal to comply with this condition. There was also evidence that other persons had been similarly subjected to this condition, all of whom were women.

A careful examination of the record shows that there was substantial evidence upon which the hearing officer could reasonably conclude that the Government did not affirmatively prove the absence of discrimination by the clear weight of the evidence. As stated above, the evidence concerning plaintiff's work performance was inconclusive at best, and hardly established by the clear weight that the allegations were not a pretext. While the defendant attempted to show that the advances were unrelated to the subsequent action of plaintiff's supervisor, none of the evidence directly established this contention. Ms. Ruth Spencer's testimony, on which the Complaint Adjudication Officer relied, was not only hearsay, but also, her testimony consisted almost entirely of what she

---

10. While the standard of review of administrative records in Title VII cases is at present unsettled, *Hackley v. Roudebush*, 171 U.S.App. D.C. 376, 520 F.2d 108, 112 n. 6, 146 n. 152 (1975) [it may be resolved shortly since the Supreme Court has sub judice the case of *Chandler v. Johnson*, 515 F.2d 251 (9th Cir.), *cert. granted*, 423 U.S. 821, 96 S.Ct. 34, 46 L.Ed.2d 37 (1975)], the review of the record here appears to be mandated by the circumstances and would not appear to be affected by a resolution of this issue. If it is viewed otherwise, then this Court would state that it is using the standard applied by the Ninth Circuit in *Chandler, supra*, 515 F.2d 254.

11. This is not to say that plaintiff was required to show more than proof suggestive of discrimination before the burden shifted to the defendants to affirmatively prove the absence of discrimination by the clear weight of the evidence. However, it is obvious that the clearer the proof of discrimination, the more difficult it is for the Government to meet its burden. In the instant case, while the proof of discrimination was meager, the defendant still did not meet its burden.

thought plaintiff believed was the problem in the office. This can hardly be said to establish as fact that the supervisor's advances were not a condition of employment imposed upon the plaintiff, but rather a non-employment related interpersonal encounter.

Having found that the Hearing Examiner's decision was based upon substantial evidence and was a reasonable interpretation of the evidence, the Court will deny defendants' renewed motion for summary judgment. And while the Court will grant plaintiff's motion for judgment on the basis of the administrative record, the Court can do no more than issue a declaration that the defendants violated 42 U.S.C. § 2000e–16(a), since the parties have not addressed what specific relief is appropriate and lawful under the circumstances. The Court will therefore issue an order disposing of the motions and requiring the parties to submit memoranda on the question of remedies.