**Diane R. WILLIAMS, Plaintiff,**

v.

**Benjamin R. CIVILETTI et al., Defendants.**

**Civ. A. No. 74–186.**

United States District Court, District of Columbia.

May 6, 1980.

Michael D. Hausfield, Steven J. Toll, Kohn, Milstein & Cohen, Washington, D. C., for plaintiff.

David H. Shapiro, Asst. U. S. Atty., Washington, D. C., for defendants.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

On September 22, 1972, Diane Williams was fired from her job with the Community Relations Service [hereinafter, "CRS"] of the Department of Justice. After exhausting her administrative remedies, she filed

this action alleging gender-based discrimination in violation of Title VII, § 717(a) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16(a). In her complaint, she sought relief on the then novel theory that her dismissal for rejecting the sexual advances of her supervisor violated Title VII. Between March 31, 1980 and April 3, 1980 the Court conducted the de novo trial of this matter. Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, hereinafter appear the Court's findings of fact and conclusions of law.

The somewhat tangled procedural history of this case is set out in a thorough manner in the opinion of the United States Court of Appeals for the District of Columbia Circuit. *Williams v. Bell*, 587 F.2d 1240, 1241–44 (D.C.Cir.1978). For present purposes it will suffice to point out certain important turns in the path of this case to its current posture.

On April 20, 1976, the Court denied the defendants motion to dismiss. *Williams v. Saxbe*, 413 F.Supp. 654, 657–61 (D.D.C. 1976). Accepting the allegations of the complaint as true, the Court found that the retaliatory actions of a male supervisor, taken because a female employee declined his sexual advances, constitutes sex discrimination within the prohibitions of Title VII. *Id.* at 661. This Court's holding has formed the foundation to a growing body of law providing remedies for such sexual harassment. *See Miller v. Bank of America*, 600 F.2d 211, 213 (9th Cir. 1979); *Barnes v. Costle*, 561 F.2d 983, 990–95 (D.C.Cir.1979); *Tomkins v. Public Service Electric & Gas, Co.*, 568 F.2d 1044, 1048 (3d Cir. 1977); *Garber v. Saxon Business Products*, 552 F.2d 1032, 1032 (4th Cir. 1977) (per curiam); *Heelan v. Johns-Mansville Corp.*, 451 F.Supp. 1382, 1388–91 (D.Colo.1978); *Munford v. James T. Barnes & Co.*, 441 F.Supp. 459, 465–67 (E.D.Mich.1977).

In addition, on April 20, 1976 the Court also granted judgment to the plaintiff on the basis of the administrative record. *Williams v. Saxbe*, 413 F.Supp. 654, 661–63 (D.D.C.1976). This conclusion was based on the uncontested allegations that the plain-

tiff's supervisor, Harvey Brinson, had made sexual advances towards the plaintiff. *Id.* at 662. The Court reviewed the administrative record and found that the final agency decision which rejected the plaintiff's charge of sex discrimination was flawed. *Id.* at 661. Furthermore, the Court found that an intermediate agency decision, which concluded that the plaintiff had been discriminated against, had been supported by substantial evidence. *Id.*

The defendants succeeded in having the Court's grant of judgment to the plaintiff reversed. *Williams v. Bell*, 587 F.2d 1240, 1248 (D.C.Cir.1978). The Court of Appeals held that the case should not have been resolved on the basis of the administrative record because of the intervening decision of the United States Supreme Court in *Chandler v. Roudebush*, 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976). *Id.* Therefore, the Court of Appeals remanded the case to this Court for a trial de novo. *Id.*

For the past eight years, it has been the plaintiff's consistent position that she was fired in retaliation for her refusal to submit to the sexual advances of Mr. Brinson. The Court finds that the evidence at trial demonstrated that it was more likely than not that the plaintiff's refusal to submit to the social and sexual advances of her supervisor was a substantial factor in the manner in which she was treated at CRS. During her first few months on the job, there were no complaints against her by Mr. Brinson or any others. Then came the sexual advances. Although Mr. Brinson denies making any advances toward the plaintiff, the Court finds this testimony to be notably incredible in light of his admission that he gave her a suggestive card and his contention that he had a sexual affair with her.

Furthermore, it is clear that an atmosphere existed at CRS in which an employee such as Ms. Williams would realize that sexual submissiveness would be rewarded at CRS by Mr. Brinson. Mr. Brinson admitted having an affair with another female subordinate employee at CRS. Knowledge of this affair traveled throughout the agen-

cy. In such circumstances it would be natural for an assumption to develop in the minds of women such as the plaintiff that submission to the advances of Mr. Brinson would smooth the path to promotion.

Only after the plaintiff rejected her supervisor's advances did criticism of her work begin. The evidence suggests, and the Court finds, that her rejections of the advances spawned the criticism of her work and eventually led to her dismissal.

Throughout these proceedings it has been the position of Mr. Brinson that he never made any sexual advances toward the plaintiff. Prior to the trial before this Court, it was also his contention that there never was any social or sexual relationship between the plaintiff and him. At the trial, Mr. Brinson claimed that there was a sexual relationship between them initiated at the plaintiff's request. Furthermore, he contended that he ended the affair after which the plaintiff retaliated against him by refusing to do her job and getting herself fired. The Court must reject Mr. Brinson's twelfth-hour revision of the events. The Court could give little credibility to a person whose story has continually changed through the course of these proceedings. In addition certain portions of his testimony did not add up. He claimed that he had to stop off while driving the plaintiff home to pick up her son from the baby-sitter. However, the evidence showed that the plaintiff's mother watched her son in the plaintiff's own home.

Even if the testimony of the plaintiff's supervisor was credible there would be serious flaws in the defendants' case. According to the defendants, the plaintiff was fired because she had a vendetta against her supervisor after he jilted her. If that were the case, the true reason for her dismissal should have been made known to the person actually in charge of firing her—the Director of CRS. Mr. Brinson never told the Director what he now contends is the true nature of their problem. Accordingly, the Director could not make an intelligent decision with respect to the action to be taken. Furthermore, the grounds for her dismissal were not accurately explained in the notice of termination. If a supervisor chooses to accept the sexual favors offered by a subordinate employee and such a relationship sours and as a result the working relationship deteriorates, no sanctions against the employee can be taken without a candid disclosure of the nature of the problem to the actual authority making the decision. Otherwise, the opportunity for abuse is excessive: the supervisor is able to take advantage of his position and remove his former lovers on the ground that a "personality conflict" has developed. It is hoped that accurate disclosure to the proper authorities will chill the willingness of supervisors to engage in such activity. Perhaps with disclosure, the people in authority will be willing to remove the supervisor who has taken advantage of his position of power. The detrimental effects of such working-place relationships are obvious.

Therefore, the Court finds that submission to the sexual advances of the plaintiff's supervisor was a term and condition of employment in violation of Title VII. An Order in accordance with this Memorandum Opinion shall be issued of even date herewith.