Opinión concurrente emitida por la
Juez Asociada Señora Rodríguez Rodríguez.
Estoy de acuerdo con lo resuelto por la mayoría de este Tribunal en cuanto a que el doctor Lorenzo Hernández co-metió hostigamiento sexual en violación a la política insti-tucional de la Universidad de Puerto Rico que lo prohíbe. De igual manera, entiendo que la Universidad de Puerto Rico estaba facultada para imponer las sanciones que en-tendiese pertinentes, entre ellas la destitución de Lorenzo Hernández. Sin embargo, creo necesario abundar sobre al-gunas de las expresiones hechas por el Tribunal hoy. Por ser del criterio de que el hostigamiento sexual constituye una grave lesión a la dignidad humana y transgrede prin-cipios de primer orden, emito la siguiente opinión concurrente.
I
El Dr. José Lorenzo Hernández (recurrido) se desempe-ñaba como catedrático del Departamento de Ciencias So-ciales de la Universidad de Puerto Rico en Aguadilla (UPRAG). Por otro lado, Félix Cruz Feliciano (estudiante) era estudiante de Ciencias Sociales de la UPRAG. Aunque había tomado cursos con el recurrido, al momento de los hechos no era estudiante de éste, pero sí de la Prof. Mirza González, quien compartía oficina con el recurrido.
El 13 de octubre de 2006 el estudiante y otros compañe- *1030 ros y compañeras, luego de una presentación en la clase de la profesora González, acudieron a la oficina de ésta para discutir la exposición oral y conocer sus notas. Posterior-mente, y luego de atenderlos, la profesora salió de la ofi-cina y el estudiante pasó a saludar al recurrido. En ese momento, el recurrido estaba ocupado atendiendo a otros alumnos, por lo cual el estudiante aprovechó para ir al baño y tomar agua. Finalmente, regresó a la oficina del recurrido y se quedó a solas con él. Mientras hablaban de asuntos relacionados a la Universidad, específicamente so-bre la candidatura a rector del recurrido, el recurrido pidió al estudiante que acercara su silla a la pantalla de la com-putadora, quedando la silla del estudiante y la del recu-rrido una al lado de la otra. Así las cosas, comenzó a ha-blarle de la suavidad de sus manos, las comparó con las del estudiante e hizo señalamientos sobre que éstas tenían las venas brotadas. Acto seguido pasó a masajearle las manos y el brazo. Los masajes subieron de intensidad y el profesor obligó al estudiante a que le diera la espalda. Así, comenzó a darle masajes en la espalda y en el cuello. Mientras esto sucedía el recurrido pasó sus manos por debajo de los bra-zos del estudiante para masajearle el pecho. De esta ma-nera, el estudiante podía sentir la respiración del recurrido en su cuello. Además, al momento de masajearle el pecho el recurrido le subió la camisa al estudiante y lo haló como para que se recostara. Este último hizo fuerza para no que-dar recostado encima de él pero aun así el recurrido le lamió una oreja. En ese momento, el estudiante se despidió y salió de la oficina molesto y ofendido. Asimismo, dijo es-tar en un estado de shock y temer por las repercusiones que pudiese tener su reacción en cuanto a su carrera universitaria.
Una vez fuera de la oficina del recurrido, el estudiante se limpió la oreja y comprobó que ésta estaba mojada. En estado de estupefacción llamó a una amiga para narrarle lo sucedido y, a continuación, se querelló verbalmente y por *1031 escrito contra el recurrido ante la Procuradora Estudiantil de la UPRAG. Con la querella se inició un procedimiento informal en contra del recurrido por ser los hechos alega-dos constitutivos de hostigamiento sexual.
Por su parte, la Procuradora Estudiantil pidió al recu-rrido que plasmara su versión de los hechos por escrito, a lo cual el recurrido respondió que dada su candidatura a rector no tenía tiempo para ello y que hiciese lo que tenía que hacer. Dado lo anterior, la Procuradora Estudiantil re-firió un informe de investigación informal a la rectora y recomendó que se iniciara un procedimiento formal, tras evaluar la prueba y concluir que el recurrido había violado la política de hostigamiento sexual vigente al momento de los hechos.
Teniendo en cuenta que los hechos sucedieron en medio de una consulta para llenar el puesto de rector o rectora de la UPRAG, la Rectora interina se inhibió del proceso y re-firió el caso al Presidente de la Universidad. Este último, a su vez, refirió el asunto al Rector del Recinto Universitario de Mayagüez (RUM) quien designó a una oficial examina-dora para que atendiera el caso. La oficial examinadora recomendó al Rector del RUM formular cargos contra el recurrido, ya que de probarse los hechos alegados, éstos constituirían una violación al Reglamento General de la Universidad de Puerto Rico y a la Política Institucional sobre Hostigamiento Sexual en la Universidad de Puerto Rico.
Así las cosas, el asesor legal de la UPR se comunicó con el Rector de la UPRAG, puesto que éste ya ocupaba el cargo en propiedad. Le comunicó que le refería el informe de la oficial examinadora para que, de entenderlo necesa-rio, iniciara un procedimiento disciplinario formal. Acorde a lo anterior el Rector de la UPRAG formuló cargos contra el recurrido por violaciones a las Secciones 35.2.8, 35.2.14, 35.2.18 y 35.2.19 del Reglamento General de la Universi-dad de Puerto Rico, Reglamento Núm. 6479, Departa-mento de Estado, de 25 de junio de 2002, págs. 48-49, y la *1032 Carta Circular Núm. 95-06. El oficial examinador reco-mendó la desestimación de los cargos. Sin embargo, el Rector de la UPRAG decidió no acoger las recomendaciones del oficial examinador y procedió a destituir al recurrido.
Inconforme, el recurrido acudió ante el Presidente de la Universidad quien confirmó la decisión del Rector de la UPRAG. Igualmente, recurrió a la Junta de Síndicos que a su vez también confirmó la destitución. Agotados los cana-les administrativos, presentó un recurso de revisión ante el Tribunal de Apelaciones. El foro intermedio revocó la de-terminación de la Junta de Síndicos por entender que ésta actuó de forma arbitraria, irrazonable y contraria a derecho. En desacuerdo, la UPR recurrió a este Tribunal.(1)
Como señala la mayoría, hoy tenemos la oportunidad de examinar la Ley Núm. 3 de 4 de enero de 1998, infra. Dado lo dañino que resulta el hostigamiento sexual en la vida y desempeño de las personas hostigadas entiendo que debe-mos ser meticulosos a la hora de incorporar factores que ilustren al juzgador de los hechos sobre si un acto o un conjunto de actos constituyen hostigamiento sexual. No de-bemos perder de perspectiva que muchos factores que apa-rentan ser neutrales pueden constituir una carga indebida para la persona hostigada. Veamos.
II
A
El hostigamiento sexual es un acto de poder que se basa en la erotiz ación de la sumisión del hostigado o la *1033 hostigada. Véase J. Halley, Sexuality Harassment, en Left Legalism / Left Critique, (W. Brown y J. Halley, eds.), Durham & London, Duke University Press, 2002. El hostiga-miento sexual lesiona la dignidad y deshumaniza a la persona hostigada. Es por ello que debemos ser extremada-mente cuidadosos a la hora de delinear sus contornos.
El concepto hostigamiento sexual (sexual harassment) se acuñó por primera vez en los años setenta y se utilizó para denunciar un tipo de discrimen en razón de sexo que sufrían las mujeres en su lugar de empleo. Se piensa que el primer grupo que empleó el término sexual harassment fue un grupo de mujeres organizadas bajo el nombre de Working Women United (WWU). V. Schultz, Reconceptualizing Sexual Harassment, 107 Yale L.J. 1683, 1685 esc. 2 (1998). Sin embargo, las bases teóricas principales para el desa-rrollo de este concepto las estableció C. MacKinnon en Sexual Harassment of Working Women, New Haven y Lon-dres, Yale University Press, 1979. MacKinnon fue enfática a la hora de establecer que la gravedad del hostigamiento sexual era tal que negaba a las mujeres la posibilidad de estudiar o trabajar; cosa a la que tenían derecho sin tener que soportar ser objeto de avances sexuales indeseados. MacKinnon, op. cit., pág. 25.
En 1976 el Tribunal de Distrito de Estados Unidos para el Distrito de Columbia sostuvo que el tomar represalias contra una empleada que rechazó avances sexuales inde-seados constituía discrimen en razón de sexo, según los parámetros establecidos en el Título VII de la Ley de De-rechos Civiles de 1972 (42 U.S.C.A. sec. 2000e et seq.), siendo éste el primer caso donde hubo un pronunciamiento judicial sobre el tema. Williams v. Saxbe, 413 F.Supp. 654 (1976). Posteriormente, el Tribunal Supremo de Estados Unidos atendió el asunto en Meritor Savings Bank v. Vinson, 477 U.S. 57 (1986), y sostuvo que el hostigamiento sexual en el ambiente de trabajo era tan lesivo al ambiente *1034 laboral como el hostigamiento racial. Específicamente dijo que “a requirement that a man or woman run a gauntlet of sexual abuse in return for the privilege of being allowed to work and make a living can be as demeaning and disconcerting as the harshest of racial epithets.” Id., pág. 67.
Por fundamentos similares, la Asamblea Legislativa de nuestro País, prohibió el hostigamiento sexual en el em-pleo mediante la Ley Núm. 17 de 22 de abril de 1988 (29 L.P.R.A. secs. 155-155m). Allí, se estableció que el hostiga-miento sexual atenta contra la dignidad de las personas y constituye una práctica discriminatoria en razón de sexo. Además, se le impuso al patrono el deber de prevenirlo y evitar su comisión. Véase Exposición de Motivos de la Ley Núm. 17 (1988 Leyes de Puerto Rico 80).
Dado lo lesivo que resultan los avances sexuales inde-seados constitutivos de hostigamiento sexual, diez años más tarde, la Asamblea Legislativa, se aprestó a legislar para prohibir su comisión en el ambiente educativo. Ley Núm. 3 de 4 de enero de 1998, Ley para Prohibir el Hosti-gamiento Sexual en las Instituciones de Enseñanza, 3 L.P.R.A. secs. 149-149k (Ley Núm. 3). La pieza reiteró el efecto lesivo del hostigamiento sexual sobre la dignidad humana y el desarrollo del proceso educativo. Además, re-calcó el deber que tiene el Estado de garantizar el derecho a la educación de los estudiantes, incluyendo un ambiente libre de hostigamiento sexual. La exposición de motivos de la ley afirma que “el hostigamiento se manifiesta principal-mente en la relación profesor-estudiante y mayormente contra mujeres. ... [L]a conducta de hostigamiento es va-riada, incluyendo hostigamiento de tipo verbal, miradas lascivas, comentarios impropios, roce corporal, presiones e invitaciones con contenido sexual, demandas implícitas de favores sexuales y ataques físicos.” Exposición de Motivos de la Ley Núm. 3, 1998 (Parte 1) Leyes de Puerto Rico 6.
Así, la Ley Núm. 3 establece la responsabilidad civil de las instituciones de enseñanza por aquellas actuaciones *1035 constitutivas de hostigamiento sexual, tanto de su personal docente como del no docente, de los estudiantes y de terceros no empleados. Aunque el grado de responsabilidad varía según la relación que tenga la institución de ense-ñanza con la persona que hostiga sexualmente, ésta tiene el deber de mantener el ambiente educativo libre de hosti-gamiento sexual. Véanse Arts. 6-8 de la Ley Núm. 3 (3 L.P.R.A. secs. 149e-149g).
Sin embargo, la Universidad de Puerto Rico se adelantó diez años a esta legislación. El 27 de mayo de 1988, me-diante la Carta Circular 88-07, estableció su política insti-tucional prohibiendo el hostigamiento sexual. Posterior-mente, el 16 de agosto de 1994 se promulgó un procedimiento para atender las querellas relacionada a esta problemática en la Carta Circular 95-03. Finalmente, el 12 de septiembre de 1995, se enmendó el procedimiento establecido por esta última y se promulgó el Procedimiento Enmendado para Tomar Acción Informal o Formal sobre Querellas de Hostigamiento Sexual o Discrimen por Razón de Sexo, sustituyendo al promulgado el 16 de agosto de 1994 (Procedimiento Enmendado) en la Carta Circular 95-06.
El Procedimiento Enmendado estableció la manera en que se sometería, investigaría y tomaría acción formal o informal ante las querellas por hostigamiento sexual. Ade-más, afirmó que el hostigamiento sexual, tanto en el em-pleo como en el ambiente académico, constituye una prác-tica ilegal y discriminatoria, la cual está prohibida, independientemente de jerarquía o posición de las perso-nas involucradas. Igualmente, sostuvo que el hostiga-miento sexual se configura en dos modalidades, a saber: quid pro quo, algo a cambio de algo, o ambiente hostil. Véase Carta Circular 95-06, págs. 3 — 5.
En aras de cumplir con la política institucional, la Carta Circular estableció dos procedimientos: el informal y el formal. El procedimiento informal está destinado a deter- *1036 minar si procede o no la formulación de cargos para impo-ner sanciones disciplinarias. De determinarse que la for-mulación de cargos procede entonces se inicia un procedimiento formal. Una vez concluido, la autoridad no-minadora, es decir la Universidad, emite una decisión al respecto.
Es importante notar que el procedimiento establecido no sólo abarca a los empleados docentes y no docentes de la Universidad sino también a los estudiantes. Esto es impor-tante porque las sanciones disciplinarias a quienes violen-tan la política institucional de hostigamiento sexual no es-tán dirigidas de manera exclusiva a quienes tienen una relación laboral con la institución. Dicho esto pasaremos a interpretar la Ley Núm. 3.
B
Como cuestión de umbral debo decir que aunque la Ley 17 y la Ley Núm. 3 proscriben una misma conducta, los ambientes a los cuales aplica cada una son muy diferentes. Es importante expresar que, aunque el hostigamiento sexual es una conducta que lacera la dignidad de las per-sonas independientemente de su sexo, orientación sexual, identidad de género, condición social y edad, hay circuns-tancias y contextos, como lo es el educativo, donde esta conducta puede resultar doblemente lesiva.
Es por ello que la Ley Núm. 3 atiende el hostigamiento sexual en las instituciones de enseñanza de manera sepa-rada al hostigamiento sexual en el empleo. En este sentido, su exposición de motivos es clara en cuanto a que el hosti-gamiento sexual tiene efectos negativos en el proceso de aprendizaje. Expresamente señala que este se configura cuando se tiene el efecto o propósito de amedrentar, ame-nazar o interferir de alguna forma con el ambiente, los *1037 estudios o con la toma de decisiones relacionadas a los es-tudios o la permanencia de un estudiante en la institución. Además, sostiene que se responsabilizará a la institución educativa por dichas actuaciones. De igual manera, la ley ordena considerar la totalidad de las circunstancias a la hora de imponer responsabilidad a una institución educa-tiva por actos constitutivos de hostigamiento sexual. Véase la Exposición de Motivos de Ley Núm. 3, ante.
Asimismo, el Artículo 2 de la Ley Núm. 3 (3 L.P.R.A. see. 149a) establece que los estudiantes tienen derecho a reali-zar sus estudios libres de presiones sexuales. Igualmente, el Artículo 3 (3 L.P.R.A. sec. 149b), dispone que el hostiga-miento sexual en el ambiente educativo puede configurarse en cualquiera de sus modalidades, entiéndase quid pro quo o ambiente hostil.
Ahora bien, procede determinar qué constituye hostiga-miento sexual por ambiente hostil en las instituciones de enseñanza. En este caso, la Ley Núm. 3 nos obliga a ana-lizar esta interrogante a la luz de la totalidad de las circunstancias. La mayoría de este Tribunal, acertada-mente, propone un análisis dual. Por una parte, nos dice, debemos atender el aspecto subjetivo del problema, es de-cir cómo lo percibe el sujeto víctima de la conducta. Por la otra, se tendrá en cuenta la parte objetiva, es decir, si la conducta incurrida constituye hostigamiento sexual inde-pendientemente de la opinión individual de la persona hostigada.
Sobre el aspecto objetivo, la Opinión mayoritaria nos invita a utilizar, de manera ilustrativa, las Guías Revisa-das de Hostigamiento Sexual: Hostigamiento de Estudian-tes por Empleados de Escuela, otros Estudiantes y Terce-ros (Guías).(2) Las Guías son un conjunto de criterios establecidos por el Departamento de Educación federal a la *1038 hora de analizar si se ha configurado o no hostigamiento sexual por ambiente hostil según el Título VII. Así, la Opi-nión mayoritaria señala, basándose en las Guías, que de-ben tenerse en cuenta los siguientes factores: (1) el grado en que la conducta afectó al estudiante; (2) el tipo, frecuen-cia y duración de la conducta; (3) la identidad y la relación entre el alegado hostigador y el estudiante; (4) la cantidad de individuos involucrados; (5) la edad y sexo del alegado hostigador y de la víctima; (6) el lugar del incidente, el tamaño de la institución educativa y el entorno en que ocu-rrieron los hechos; (7) otros incidentes en la institución; (8) los incidentes que sean basados en género, aunque no sea hostigamiento de naturaleza sexual. Opinión mayoritaria, pág. 1025, citando a las Guías, págs. 6-7. Agrega que la mención de factores es numerus apertus. Sin embargo, sos-tiene que en el análisis por realizarse deben considerarse estos factores y otros pertinentes, caso a caso, para objeti-vamente saber si el acercamiento sexual no deseado puede, razonablemente, considerarse como hostigamiento sexual. Opinión mayoritaria, pág. 1026.
Debo decir que en cuanto a la frecuencia y duración, y dado que el ambiente académico es diferente al ambiente laboral, soy del criterio de que no se debe requerir una conducta severa o una multiplicidad de incidentes. De igual manera, el juzgador de los hechos debe considerar que un acto de violencia verbal generalmente antecede a un acto de violencia física. Es por ello que no deben mini-mizarse los incidentes de violencia verbal sólo porque no estén acompañados de un acto de naturaleza física. En re-lación con esto, un estudio realizado por la American Association of University Women (AAUW) sostiene que “[s]tudents who admitted to sexually harassing other students said that they were most likely to sexually harass other students verbally.” C. Hill y H. Kearl, Crossing the Line: Sexual Harassment at School, Washington D.C., *1039 A.A.U.W., 2001, pág. 14.(3) De igual forma, “even incidents that appear ‘minor’, such a sexual comments and jokes or being called gay or lesbian, may have profound impact on the emotional well-being of some students”. íd., pág. 8. Más aún, el mismo estudio revela que “[v]erbal and written forms of sexual harassment were most common than physical harassment”. íd., pág. 20. El mismo estudio esta-blece que el 36% de las estudiantes han sido objeto de co-mentarios o bromas con contenido de índole sexual, frente a un 3% que han sido intimidadas físicamente. íd., pág. 21.
Sobre el factor que analiza si la conducta constitutiva de hostigamiento sexual se llevó a cabo en grupo o individual-mente, es importante señalar que no porque el acto pro-venga de un grupo de personas resulta menos lesivo que si se realiza individualmente. En algunas ocasiones, un grupo de personas puede tener un efecto igual o más inti-midante sobre la persona hostigada sexualmente. Es por ello que el juzgador de los hechos debe ser sutil a la hora de utilizar, aunque sea ilustrativamente, este factor porque, por ejemplo, un 12% de los estudiantes entrevistados y que fueron hostigados sexualmente, el perpetrador fue un grupo de varones. Hill y Kearl, op. cit., pág. 13. El efecto del hostigamiento sexual, sea en grupo o de persona a persona, siempre tiene un efecto nocivo en la persona hostigada.
Igualmente cuestionable puede ser que se tome en con-sideración el factor edad y sexo del hostigador y de la persona hostigada. Lo anterior porque el hostigamiento sexual, en cualquiera de sus formas, constituye un ataque a la dignidad independientemente de la edad, del sexo, de la orientación sexual o la orientación de género de la persona hostigada. La controversia ante nuestra considera- *1040 ción ilustra perfectamente que el hostigamiento sexual trasciende las barreras del sexo y de la edad.
Asimismo, puede resultar problemático que se considere el lugar del incidente, el tamaño de la institución educa-tiva y el entorno en el que ocurrieron los hechos. Estudios demuestran que el hostigamiento sexual no se reduce a un lugar específico del campus o recinto. C. Hill y E. Silva, Drawing the Line: Sexual Harassment on Campus, Washington, D.C., A.A.U.W., 2005, pág. 15.(4)
Además, cabe destacar que las Guías del Departamento de Educación federal que la Opinión mayoritaria nos con-vida a utilizar de manera ilustrativa, datan del año 2001. Ha pasado más de una década desde su promulgación. Luego de un estudio ponderado de éstas he podido obser-var que lo razonable es atemperarlas a los tiempos en que vivimos y a la realidad puertorriqueña.
Es una realidad que, aunque el hostigamiento sexual es un comportamiento no permitido que trasciende las cate-gorías de sexo, edad, orientación sexual u orientación de género, la mayoría de las personas hostigadas son mujeres. Véanse: Hill y Kearl, op. cit., y Hill y Silva, op. cit. Es por ello, y en atención al problema de violencia contra las mu-jeres que aqueja a nuestro País, que este Tribunal debe ser en extremo cuidadoso a la hora de delinear los contornos de lo que puede —o no— constituir violencia contra éstas.
Dicho lo anterior, conviene destacar que el hostiga-miento sexual se presenta, también, entre personas del mismo sexo. En este caso, y considerando que la nuestra es una sociedad patriarcal organizada por roles de género, debe quedar claro que el hostigamiento sexual por am-biente hostil también se configura cuando la razón para el mismo es que la persona hostigada no se comporta según los roles de género asignados culturalmente a su sexo *1041 biológico. En este caso, un varón —o una mujer— puede hostigar a otro varón —o a una mujer— simple y llana-mente porque el hostigado o la hostigada no se comporta según lo esperado para su sexo, independientemente de su orientación sexual. Lo anterior puede constituir un am-biente igualmente hostil al del caso de autos.
Finalmente, estoy de acuerdo con el análisis dual que establece la mayoría. Sin embargo soy del criterio de que debemos ser diáfanos al establecer el carácter meramente ilustrativo de las Guías, ante. Dado que el hostigamiento sexual, en sü modalidad de ambiente hostil, resulta alta-mente lesivo al proceso de aprendizaje y que sus conse-cuencias emocionales y psicológicas pueden influir en la decisión de un estudiante en continuar —o no— sus estu-dios, es necesario que el juzgador de los hechos sepa que no está limitado por una serie de factores determinados. En-tiendo que la experiencia subjetiva es fundamental a la hora de determinar si se configuró el ambiente hostil y que un solo acto verbal puede ocasionar que el ambiente edu-cativo no sea el apropiado para el proceso de aprendizaje, máxime si la persona hostigadora es un profesor, maestro o alguien que ocupa un puesto de poder en la institución educativa.
En este sentido, entiendo que analizar el lugar donde sucedieron los hechos como también el sexo o edad de la persona hostigada o si los actos se realizaron en grupo o no puede ser ilustrativo. Sin embargo, nada de ello minimiza el grave daño a la dignidad que sufre la persona hostigada.
Al igual que la mayoría de esta Curia pienso que lo ade-cuado es analizar esta problemática caso a caso, aten-diendo la totalidad de las circunstancias. Así, soy del crite-rio de que debemos alejarnos de establecer criterios que puedan utilizarse por los tribunales inferiores con rigidez.
En este contexto, se vuelve fundamental distinguir que lo que está ante nuestra consideración es determinar qué *1042 actos son los configurativos de hostigamiento sexual por ambiente hostil en el ambiente académico. Entiendo que un solo acto, independientemente de que sea verbal o fí-sico, puede crear un ambiente hostil y es responsabilidad de la institución educativa mantener el ambiente libre de hostigamiento sexual. Ahora bien, el determinar si ese único acto es suficiente para la imposición de determinada sanción disciplinaria debe ser atendido por la autoridad nominadora, en el caso de las instituciones públicas, o por la institución educativa, en el caso de las instituciones privadas. Lo anterior es diferente del remedio que pueda solicitar la persona hostigada sexualmente y que depen-derá de que sea estudiante, empleado o persona ajena a la institución.
III
En el caso ante nuestra consideración no hay duda de que las actuaciones del recurrido configuraron hostiga-miento sexual en su modalidad de ambiente hostil. El re-currido incurrió en actos de índole sexual al acercarse al estudiante, sobarle las manos, los brazos y acariciarle el pecho. De igual manera, el estudiante, según se deduce del expediente, se afectó emocionalmente a tal punto que hasta los acercamientos y muestras de afecto de su padre le hacen sentir incómodo y nervioso.
En consecuencia, entiendo que la conducta del recurrido configuró hostigamiento sexual en las circunstancias en que ocurrieron los actos. Es decir, mientras estaban a solas en un espacio físico reducido y dominado por una relación de poder como la de profesor (candidato a rector)-estudiante. Sin embargo, soy del criterio de que los mismos actos hubiesen constituido hostigamiento sexual por am-biente hostil aún si se hubiesen configurado en un espacio abierto o público y en una relación de pares.
El hostigamiento sexual es un acto de violencia y debe *1043 tratarse como tal. Por lo cual, entiendo razonable que no exijamos que para que se configure hostigamiento sexual en su modalidad de ambiente hostil deban darse determi-nadas circunstancias. Hacerlo de manera contraria presu-pondría perpetuar los esquemas patriarcales que subesti-man el efecto de estos actos en la vida y dignidad de las personas.
No podemos olvidar que el hostigamiento sexual en el ambiente académico no sólo se da de profesor a empleado a estudiantes, sino también, como bien establece la Ley Núm. 3 puede darse de estudiante a estudiante. Además, es importante señalar que se da tanto por la erotización de la sumisión de la persona hostigada como por el placer de-venido de la humillación de quien no se comporta de acuerdo a los roles de género asignados a su sexo.
No hay duda de que el recurrido incurrió en una viola-ción a la política institucional de la Universidad de Puerto Rico que prohíbe el hostigamiento sexual. Es por ello que le correspondía a la Universidad tomar acción para mantener el ambiente académico libre de hostigamiento sexual y así proveer un ambiente propicio para el desarrollo de proceso educativo. En aras de conseguir lo anterior la Universidad entendió que lo adecuado era destituir al recurrido; dicha acción estaba dentro del margen de su discreción.
IV
Por los fundamentos antes expresados, concurro con la Opinión del Tribunal.

 La Universidad adujo los señalamientos de error siguientes:
“Erró el Tribunal de Apelaciones al revocar a la Junta de Síndicos de la Univer-sidad resolviendo que a base de los hechos determinados en el caso de autos no se probó la conducta imputada de hostigamiento sexual en una institución de ense-ñanza conforme a la Ley Núm. 3 de 4 de enero de 1998.
“Erró el Tribunal de Apelaciones al revocar a la Junta de Síndicos dejando totalmente impune de sanciones disciplinarias al recurrido aun cuando se probó que la conducta imputada violó el reglamento general de la universidad.” Petición de certiorari, pág. 8.

 Disponibles en http://www2.ed.gov/about/offices/list/ocr/docs/shguide.pdf (úl-tima visita, 6 de marzo de 2012).

 Disponible en http://www.aauw.org/learn/research/upload/ CrossingTheLine.pdf (última visita, 6 de marzo de 2012).

 Disponible en http://www.aauw.org/learn/research/upload/DTLFinal.pdf (úl-tima visita, 6 de marzo de 2012).